1  TUCKER ELLIS LLP
   Anthony D. Brosamle – SBN 208664
2  anthony.brosamle@tuckerellis.com
   Jenny-Anne S. Flores – SBN 273364
3  jenny-anne.flores@tuckerellis.com
   515 South Flower Street
4  Forty-Second Floor
   Los Angeles, CA 90071-2223
5  Telephone:    213.430.3400
   Facsimile:    213.430.3409
6
   TUCKER ELLIS LLP
7  Nicole E. Gage – SBN 208658
   nicole.gage@tuckerellis.com
8  135 Main St., Suite700
   San Francisco, CA 94105
9  Telephone:  415.617.2400
   Facsimile:  415.617.2409
10
   Attorneys for Defendant
11 ROCKWELL AUTOMATION, INC.



FILED
CLERK, U.S. DISTRICT COURT

AUG – 1 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY

12

## UNITED STATES DISTRICT COURT

13

## CENTRAL DISTRICT OF CALIFORNIA

14

15 | BENJAMIN LARA, JR. and MARY
16 | LARA,

17 |              Plaintiffs,

18 |      v.

19 | CBS CORPORATION, a Delaware
   | Corporation, formerly known as VIACOM
20 | INC., successor by merger to CBS
   | CORPORATION, a Pennsylvania Corporation,
21 | formerly known as WESTINGHOUSE
   | ELECTRIC CORPORATION; EATON
22 | CORPORATION, individually and as successor
23 | in interest, parent, alter ego and equitable trustee
   | to CUTLER-HAMMER, INC.; FOSTER
24 | WHEELER, LLC, survivor to merger with
   | FOSTER WHEELER CORPORATION;
25 | GEORGIA-PACIFIC LLC, formerly known as
26 | GEORGIA-PACIFIC CORPORATION;
   | GENERAL ELECTRIC COMPANY;
27 | INDUSTRIAL CLUTCH & BRAKE, INC. dba
   | FRICTION MATERIALS CO. OF LONG
28 | BEACH; MECHANICAL DRIVES &

Case No. CV 13-05569-ABC (MANx)

DEFENDANT ROCKWELL
AUTOMATION, INC.'S NOTICE OF
REMOVAL OF ACTION UNDER 28
U.S.C. § 1442(A)(1) (GOVERNMENT
CONTRACTOR IMMUNITY-
ACTING UNDER DIRECTION OF
FEDERAL OFFICERS)

COPY

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

BELTING formerly known as LOS ANGELES RUBBER COMPANY; METALCLAD INSULATION CORPORATION; OCCIDENTAL CHEMICAL CORPORATION individually and as successor in interest, parent, alter ego and equitable trustee of the DUREZ DIVISION OF HOOKER CHEMICALS & PLASTICS CORPORATION; P&H MINING EQUIPMENT, INC.; ROCKWELL AUTOMATION, INC., individually, and as successor in interest, parent, alter ego and equitable trustee of ALLEN-BRADLEY COMPANY and ROSTONE CORPORATION; ROGERS CORPORATION; SCHNEIDER ELECTRIC USA, INC. formerly known as SQUARE D COMPANY; UNION CARBIDE CORPORATION; METROPOLITAN LIFE INSURANCE COMPANY; FIRST DOE through TWO HUNDRED SEVENTY-FIFTH DOE, inclusive,

Defendants.

**TO THE HONORABLE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

Defendant Rockwell Automation, Inc. ("Rockwell") hereby gives notice of removal of the above-entitled action from the Superior Court of the State of California for the County of Los Angeles, to the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446.

**Preliminary Matters**

1.    On July 9, 2013, Plaintiffs Benjamin Lara, Jr. and Mary Lara filed a Complaint for Personal Injuries against multiple defendants, including Rockwell, in the Superior Court of the State of California for the County of Los Angeles.  On July 30, 2013, Rockwell filed its Answer to the Complaint.  Attached hereto as **Exhibit A** is a true and correct copy of the Summons and Complaint served on Rockwell, and Rockwell's Answer.  Rockwell has not been served with any other pleadings.

///

DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF FEDERAL OFFICERS)
010802.005348/918775

2. Plaintiffs allege in their Complaint that Benjamin Lara was injured as a result of exposure to asbestos and asbestos-containing products while working for various employers within the State of California, including the United States Navy.

3. This case is removable based on federal officer jurisdiction under 28 U.S.C., § 1442(a)(1). Plaintiffs' claims against Rockwell are based on Mr. Lara's exposure to equipment allegedly supplied to the United States Navy; products that would have been designed and manufactured in accordance with specifications provided by the U.S. government, and designed and built under the direction and control of the U.S. government and its officers.

4. This Notice of Removal is timely. The 30-day removal period prescribed by 28 U.S.C. § 1446(b) begins to run when defendant receives a copy of the initial pleading setting forth the claim for relief from which it may first be ascertained that the case is removable. 28 U.S.C. § 1446(b). Rockwell was served with the Summons and Complaint on July 18, 2013. The receipt of the Complaint put Rockwell on notice for the first time in this action that Plaintiffs' claims involve Mr. Lara's exposure to asbestos in military equipment allegedly built for the United States Government pursuant to specifications provided by the U.S. Navy and under the direction and control of the U.S. government and its officers. As this Notice of Removal is being filed within 30 days of Rockwell's receipt of the Complaint, it is timely under 28 U.S.C. § 1446(b).

## Nature of the Case

5. This case is based on Plaintiffs' allegations that Mr. Lara contracted mesothelioma and/or other asbestos-related diseases as a result of his exposure to asbestos dust and fibers.

6. Plaintiffs assert claims against Rockwell for Negligence, Breach of Implied Warranty, Strict Product Liability, Fraud/ Failure to Warn, Conspiracy to Defraud/Failure to Warn, and Loss of Consortium.

///

///

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

## Jurisdiction, Venue and Intradistrict Assignment

7.      Jurisdiction is based on 28 U.S.C. §§ 1331 and 1442(a)(1) as set forth below under Grounds for Removal.

8.      Venue is proper in the Central District of California because the state court action, which is subject to this removal petition, was filed in the Superior Court of California for the County of Los Angeles.

9.      Furthermore, §1442(a) authorizes such a removal without the consent of any other defendant. *See Ely Valley Mines, Inc. v. Hartford Acc. & Indem. Co.*, 644 F.2d 1310, 1314-1315 (9th Cir. 1981) ("federal officer…can remove without other defendants joining the petition, and the entire case is removed to the federal court").

## Grounds for Removal

10.      This is a civil action over which this Court has original jurisdiction under 28 U.S.C. § 1331, and is removable to this Court by Rockwell pursuant to 28 U.S.C. § 1442(a)(1) in that Plaintiffs' alleged right to relief depends on the resolution of a substantial question of federal law.

11.      Rockwell was at all relevant times a "person" within the meaning of 28 U.S.C. § 1442(a)(1). *Fung v. Abex Corp.*, 816 F.Supp. 569, 572 (N.D.Cal. 1992) (finding that a corporate defendant was a "person").

12.      Should Plaintiffs file a motion to remand this case, Rockwell respectfully requests an opportunity to respond more fully in writing, but offers the following authorities at this time:

13.      Removal pursuant to 28 U.S.C. § 1442(a)(1) is appropriate where the moving party can (1) demonstrate that it acted under the direction of a federal officer, (2) raise a colorable federal defense to plaintiffs' claims, and (3) demonstrate a causal nexus between plaintiffs' claims and the acts it performed under color of federal office. *See Mesa v. California,* 489 U.S. 121, 124-25, 129-31, 134-35 (1989); *Fung v. Abex Corp.,* 816 F.Supp. 569 (N.D.Cal. 1992); *Machnik v. Buffalo Pumps, Inc.*, 506 F.Supp.2d 99,

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

4

1  102 (D.Conn. 2007).  Here, Rockwell has satisfied all three requirements and is entitled

2  to the federal officer removal provision.

3      14.    Plaintiffs claim that decedent was exposed to asbestos from electrical

4  components allegedly supplied by Rockwell on board U.S. Naval vessels.  Based on

5  Plaintiffs' allegations, Rockwell has a colorable federal defense of government contractor

6  immunity in that any products designed, manufactured, or supplied for use on U.S. Navy

7  vessels for which Rockwell is allegedly responsible, would have been designed,

8  manufactured, or supplied under the direction of an officer of the United States within the

9  meaning of 28 U.S.C., § 1442(a)(1).

10      15.    All electrical equipment and components manufactured for use on U.S.

11  Navy vessels strictly complied with very precise Navy Department specifications or

12  Military Specifications (MilSpecs).  Before a manufacturer received authorization to

13  manufacture or supply electrical components for/to the U.S. Navy, all of the drawings,

14  plans, technical manuals and other design documentation first had to be inspected and

15  approved by either U.S. Navy.  During the time in question, the Navy inspections and

16  approvals were the responsibility of the Bureau of Engineering and its successor

17  organization, the Bureau of Ships (hereinafter "Navy").  The Navy frequently required

18  changes in design, materials and documentation before approving the design and

19  authorizing the manufacture of the electrical devices. (Declaration of Thomas F.

20  McCaffery, **Exhibit B**, ¶¶ 8-11).

21      16.    United States Naval Machinery Inspectors were stationed on site at

22  manufacturing facilities to inspect and test the electrical devices during each phase of the

23  manufacturing process.  At any point, if any material, feature or component of the

24  electrical devices failed to comply with the applicable specifications, standards or the

25  approved design, then it would have been rejected.  In short, if any electrical device

26  supplied to the Navy was installed aboard a U.S. Navy vessel, then it conformed to the

27  detailed plans that were approved by the Navy and necessarily complied with all of the

28  precise specifications and standards, including the specification of the precise material

TUCKER ELLIS LLP
Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

5

composition of component parts, and any that may have contained asbestos. (McCaffery Decl., **Exhibit B**, ¶ 12).

17.     The Navy required the use of many different types of materials in the equipment built for installation aboard its ships. Each sub-component was designed and manufactured in accordance with similarly precise specifications, standards and, design reviews which also specifically required the precise type of material to be used in these components. Where the specifications or standards permitted the manufacturer to choose between two or more types of materials (such as plastic materials or insulation and other heat resistant materials), the manufacturer's choice was subject to specific Navy approval. To the extent that any piece of electrical device supplied by a manufacturer to the U.S. Navy for installation on a naval vessel contained asbestos, it would have been specifically required or approved by the Navy through the specification and design approval process. (McCaffery Decl., **Exhibit B**, ¶ 13).

18.     If a component on a piece of naval equipment was actually installed onboard a U.S. Navy vessel, then that component and the material composition of that component also complied with the precise specifications, standards and design requirements that the Navy required for such a component. If such a component contained asbestos, then the Navy and/or Maritime Commission required that it contain asbestos. Therefore, every facet of the design and manufacture of electrical devices manufactured or supplied for use on a Navy vessel was controlled by an agency of the U.S. Government. (McCaffery Decl., **Exhibit B.**, ¶¶ 14-15.)

19.     Rockwell asserts a colorable federal defense to Plaintiffs' claims, which are affirmatively barred by government contractor immunity as stated by the U.S. Supreme Court in *Boyle v. United Technologies Corp.*, 487 U.S. 500, 108 S.Ct. 2510 (1988), and by the Ninth Circuit Court of Appeals in *McKay v. Rockwell International Corp.*, 704 F.2d 444 (9th Cir. 1983). Pursuant to this federal defense, equipment manufacturers, such as Rockwell, cannot be held liable under state law for any injuries caused by the equipment built for or under the control of the U.S. Government when: (1) the United

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

6

States approved reasonably precise specifications; (2) the equipment conformed to these specifications; and (3) the equipment supplier warns the military about any hazards involved in the use of the equipment that are <u>known to the equipment supplier but not known to the military</u>. *See Boyle, supra,* 487 U.S. 500 at 512; *McKay, supra,* 704 F.2d. 444 at 451; *Sundstrom, supra,* 816 F.Supp. 587 at 596-97.

20.     Here, Rockwell has raised a colorable federal defense to this action under government contractor immunity.  To the extent Plaintiffs claim Rockwell is responsible for electrical components on board U.S. Naval vessels, (1) such components or equipment would have been designed and manufactured pursuant to precise specifications provided and approved by the U.S. Government through the Navy and/or Coast Guard, (2) the components and equipment would have conformed to those specifications, and (3) the U.S. Government, one of the world's leaders in industrial hygiene concerns, would have possessed information equal to or superior to that of Rockwell concerning issues of industrial hygiene and asbestos medicine, including the potential hazards involved with use of asbestos-containing components or materials associated with electrical or other Naval/marine equipment.  (McCaffery Decl., **Exhibit B, ¶ 17.**)  Thus, Rockwell would not have had knowledge of any hazards associated with the use of the equipment which was not already known to the U.S. Government. (McCaffery Decl., **Exhibit B, ¶ 17.**)

21.     A causal nexus exists between Plaintiffs' claims and the acts allegedly performed by Rockwell under the direction of federal officers.  Plaintiffs' claims against Rockwell arise out of Mr. Lara's alleged work on and around electrical equipment on board U.S. Navy for which Rockwell is allegedly responsible.  Any electrical components provided for use in those vessels would have been designed and manufactured pursuant to precise federal regulations and/or military specifications, and built under the detailed and direct control of federal officers.  The conduct attributable to Rockwell is inseparable from the government specifications, regulations, and oversight, and a clear causal nexus exists between Plaintiffs' claims and the acts performed under

TUCKER ELLIS LLP

Cleveland ◆ Columbus ◆ Denver ◆ Los Angeles ◆ San Francisco

7

color of federal office.  Rockwell has more than a colorable federal defense to this state action under government contractor immunity.  *See Boyle, supra,* 487 U.S. at 512; *Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587 (N.D. Cal. 1993); *Fung v. Abex Corp.*, 816 F.Supp. 569 (N.D. Cal. 1992); *Pack v. AC and S, Inc.* 838 F. Supp. 1099 (D. Md. 1993); *Crocker v. Borden* 852 F.Supp. 1322 (E.D. La. 1994); *Arness v. Boeing North American, Inc.*, 997 F.Supp. 1268 (C.D. Cal. 1998).

22.    The existence of a single removable claim allows removal of the entire action.  28 U.S.C. § 1441(c).  *National Audubon Society v. Dept. of Water*, 496 F.Supp. 499, 509 (E.D. Cal. 1980).

23.    Notice of this removal has been filed with the state court and provided to all adverse parties pursuant to 28 U.S.C. § 1446(d).

24.    This removal is based upon this Notice of Removal to the United States District Court, the Certificate of Service of Notice to Adverse Party of Removal, the Notice to Adverse Party of Removal filed in the state court action, and any other matters which the court deems applicable.

WHEREFORE, defendant Rockwell prays that this action be removed from the Superior Court of the State of California for the County of Los Angeles to the United States District Court for the Central District of California.


DATED:  August 1, 2013                    TUCKER ELLIS LLP


By: _____
    Nicole E. Gage
    Anthony D. Brosamle
    Anthony.brosamle@tuckerellis.com
    Jenny-Anne S. Flores
    jenny-anne.flores@tuckerellis.com
    Attorneys for Defendant
    ROCKWELL AUTOMATION, INC.

DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF FEDERAL OFFICERS)
010802.005348/918775

# EXHIBIT A

*7/18/13 ⋅ [handwritten] 27*

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

NOTICE TO DEFENDANT: CBS CORPORATION, a Delaware
*(AVISO AL DEMANDADO):* Corporation, formerly known as VIACOM
INC., successor by merger to CBS CORPORATION, a Pennsylvania
Corporation, formerly known as WESTINGHOUSE ELECTRIC
CORPORATION, et al.
(For List of Defendants see Additional Parties Attachment form
attached.)

YOU ARE BEING SUED BY PLAINTIFF: BENJAMIN LARA, JR. and
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):* MARY LARA

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*
**CONFORMED COPY**
OF ORIGINAL FILED
Los Angeles Superior Court

JUL 09 2013

John A. Clarke, Executive Officer/Clerk
By Amber Hayes, Deputy

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: | CASE NUMBER: |
|---|---|
| *(El nombre y dirección de la corte es):* | *(Número del Caso):* **BC514487** |

Superior Court
County of Los Angeles
111 North Hill Street
Los Angeles, CA 90012

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Gordon D. Greenwood, Esq. (C.S.B. #136097)     (510) 302-1000     (510) 835-4913
Kazan, McClain, Satterley, Lyons, Greenwood & Oberman, A Professional Law Corporation
Jack London Market, 55 Harrison Street, Suite 400
Oakland, CA 94607

| DATE: | Clerk, by | John A. Clarke | , Deputy |
|---|---|---|---|
| *(Fecha)* | *(Secretario)* | **Amber Hayes** | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

NOTICE TO THE PERSON SERVED: You are served

[SEAL]

JUL 09 2013

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [X] on behalf of *(specify):* ROCKWELL AUTOMATION, INC., individually, and as successor in interest, parent, alter ego and equitable trustee of ALLEN-BRADLEY COMPANY and ROSTONE CORPORATION

under: [X] CCP 416.10 (corporation)     [ ] CCP 416.60 (minor)
[ ] CCP 416.20 (defunct corporation)     [ ] CCP 416.70 (conservatee)
[ ] CCP 416.40 (association or partnership)     [ ] CCP 416.90 (authorized person)
[ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Legal
Solutions
℗ Plus

Code of Civil Procedure §§ 412.20, 405

EXHIBIT ___A___

SUM-200(A)

| SHORT TITLE: BENJAMIN LARA, JR. and MARY LARA v. CBS CORPORATION, et al. | CASE NUMBER:<br>BC514487 |
|---|---|

### INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

### LIST OF DEFENDANTS:

(2) EATON CORPORATION, individually and as successor in interest, parent, alter ego and equitable trustee to CUTLER-HAMMER, INC.;

(3) FOSTER WHEELER, LLC, survivor to merger with FOSTER WHEELER CORPORATION;

(4) GEORGIA-PACIFIC LLC, formerly known as GEORGIA-PACIFIC CORPORATION;

(5) GENERAL ELECTRIC COMPANY;

(6) INDUSTRIAL CLUTCH & BRAKE, INC. dba FRICTION MATERIALS CO. OF LONG BEACH;

(7) MECHANICAL DRIVES & BELTING formerly known as LOS ANGELES RUBBER COMPANY;

(8) METALCLAD INSULATION CORPORATION;

(9) OCCIDENTAL CHEMICAL CORPORATION individually and as successor in interest, parent, alter ego and equitable trustee of the DUREZ DIVISION OF HOOKER CHEMICALS & PLASTICS CORPORATION;

(10) P&H MINING EQUIPMENT, INC.;

(11) ROCKWELL AUTOMATION, INC., individually, and as successor in interest, parent, alter ego and equitable trustee of ALLEN-BRADLEY COMPANY and ROSTONE CORPORATION;

(12) ROGERS CORPORATION;

(13) SCHNEIDER ELECTRIC USA, INC. formerly known as SQUARE D COMPANY;

(14) UNION CARBIDE CORPORATION;

(15) METROPOLITAN LIFE INSURANCE COMPANY;

(16) FIRST DOE through TWO HUNDRED SEVENTY-FIFTH DOE, inclusive

Page ___1___ of ___1___

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
Attachment to Summons

Legal
Solutions
Plus

10

1   Gordon D. Greenwood, Esq. (C.S.B. #136097)
    KAZAN, McCLAIN, SATTERLEY,
2   LYONS, GREENWOOD & OBERMAN                    **CONFORMED COPY**
    A Professional Law Corporation                OF ORIGINAL FILED
3   Jack London Market                            Los Angeles Superior Court
    55 Harrison Street, Suite 400
4   Oakland, California  94607                    JUL 0 9 2013
    Telephone: (510) 302-1000
5                                                 John A. Clarke, Executive Officer/Clerk
    Attorneys for Plaintiff                       By Amber Hayes, Deputy
6

7

8             IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                IN AND FOR THE COUNTY OF LOS ANGELES

10                                                B C 5 1 4 4 8 7

11  | LAOSD ASBESTOS CASES | JCCP Case No.: 4674 |

12  | | (Hon. Emilie H. Elias, Coordination Trial Judge Central Civil West -- Dept. 324) |

13

14  | BENJAMIN LARA, JR. and MARY LARA, | No. |

15  | Plaintiffs, | **COMPLAINT FOR PERSONAL INJURIES; STRICT LIABILITY;** |

16  | vs. | **BREACH OF WARRANTIES;** |

17  CBS CORPORATION, a Delaware          **NEGLIGENCE; FRAUD; CONSPIRACY;**
    Corporation, formerly known as VIACOM   **CONCERT OF ACTION LIABILITY;**
18  INC., successor by merger to CBS        **AND LOSS OF CONSORTIUM**
    CORPORATION, a Pennsylvania Corporation,
19  formerly known as WESTINGHOUSE       **Code of Civil Procedure § 36(d)**
    ELECTRIC CORPORATION; EATON
20  CORPORATION, individually and as successor
    in interest, parent, alter ego and equitable trustee
21  to CUTLER-HAMMER, INC.; FOSTER
    WHEELER, LLC, survivor to merger with
22  FOSTER WHEELER CORPORATION;
    GEORGIA-PACIFIC LLC, formerly known as
23  GEORGIA-PACIFIC CORPORATION;
    GENERAL ELECTRIC COMPANY;
24  INDUSTRIAL CLUTCH & BRAKE, INC. dba
    FRICTION MATERIALS CO. OF LONG
25  BEACH; MECHANICAL DRIVES &
    BELTING formerly known as LOS ANGELES
26  RUBBER COMPANY; METALCLAD
    INSULATION CORPORATION;
27  OCCIDENTAL CHEMICAL CORPORATION
    individually and as successor in interest, parent,
28  alter ego and equitable trustee of the DUREZ

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

GGREENWOOD/1232611.1

DIVISION OF HOOKER CHEMICALS &
PLASTICS CORPORATION; P&H MINING
EQUIPMENT, INC.; ROCKWELL
AUTOMATION, INC., individually, and as
successor in interest, parent, alter ego and
equitable trustee of ALLEN-BRADLEY
COMPANY and ROSTONE CORPORATION;
ROGERS CORPORATION; SCHNEIDER
ELECTRIC USA, INC. formerly known as
SQUARE D COMPANY; UNION CARBIDE
CORPORATION; METROPOLITAN LIFE
INSURANCE COMPANY; FIRST DOE
through TWO HUNDRED SEVENTY-FIFTH
DOE, inclusive,

                    Defendants.

Plaintiff BENJAMIN LARA alleges:

## PRODUCTS DEFENDANTS:

### FIRST CAUSE OF ACTION

**Negligence**
**[Against All Product Defendants]**

### I.

Plaintiff, Benjamin Lara, a resident of Los Angeles County, California, brings this action on his own behalf. The masculine form as used in this complaint, if applicable as shown by the context hereof, applies to a female person or a corporation.

### II.

Plaintiff does not know the true names and capacities, whether corporate, associate or individual of defendants sued herein as FIRST DOE through TWO HUNDRED SEVENTY-FIFTH DOE, inclusive, and each of them, and for that reason prays leave to insert the true names and capacities of said defendants when the same are ascertained. Plaintiff is informed and believes and therefore alleges that each of the defendants designated herein as a DOE is negligently, intentionally and/or strictly liable or responsible in some manner for the events and happenings herein referred to, and proximately caused injury and damages to plaintiff thereby as herein alleged.

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

2

GGREENWOOD/1232611.1

12

1    //

2                     **III.**

3       At all times herein mentioned, each of the defendants was the agent and employee of each

4    of the remaining defendants, and was at all times acting within the purpose and scope of said

5    agency and employment, and each defendant has ratified and approved the acts of the remaining

6    defendants.

7                     **IV.**

8       Defendants CBS CORPORATION, a Delaware Corporation, formerly known as VIACOM

9    INC., successor by merger to CBS CORPORATION, a Pennsylvania Corporation, formerly known

10   as WESTINGHOUSE ELECTRIC CORPORATION; EATON CORPORATION, individually and

11   as successor in interest, parent, alter ego and equitable trustee to CUTLER-HAMMER, INC.;

12   FOSTER WHEELER, LLC, survivor to merger with FOSTER WHEELER CORPORATION;

13   GEORGIA-PACIFIC LLC, formerly known as GEORGIA-PACIFIC CORPORATION;

14   GENERAL ELECTRIC COMPANY; INDUSTRIAL CLUTCH & BRAKE, INC. dba FRICTION

15   MATERIALS CO. OF LONG BEACH; MECHANICAL DRIVES & BELTING formerly known

16   as LOS ANGELES RUBBER COMPANY; METALCLAD INSULATION CORPORATION;

17   OCCIDENTAL CHEMICAL CORPORATION individually and as successor in interest, parent,

18   alter ego and equitable trustee of the DUREZ DIVISION OF HOOKER CHEMICALS &

19   PLASTICS CORPORATION; P&H MINING EQUIPMENT, INC.; ROCKWELL

20   AUTOMATION, INC., individually, and as successor in interest, parent, alter ego and equitable

21   trustee of ALLEN-BRADLEY COMPANY and ROSTONE CORPORATION; ROGERS

22   CORPORATION; SCHNEIDER ELECTRIC USA, INC. formerly known as SQUARE D

23   COMPANY; UNION CARBIDE CORPORATION; METROPOLITAN LIFE INSURANCE

24   COMPANY; FIRST DOE through FIFTIETH DOE, inclusive, were at all times herein and still are

25   corporations authorized to and doing business in the State of California and are hereby designated

26   PRODUCTS defendants.

27   //

28   //

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

**V.**

PRODUCTS defendants' products at issue in this complaint consist of asbestos and asbestos-containing products, or products as to which PRODUCTS defendants knew or should have known that reasonably foreseeable uses of the products would expose persons such as plaintiff who worked with or around the products to friable asbestos. These products were defective in their design, manufacture, labeling, marketing and/or warning and are referred to throughout this complaint as "asbestos" or "asbestos-containing products."

**VI.**

At all times herein mentioned defendants, and each of them, were engaged in the business of mining, manufacturing, assembling, supplying, packaging, installing and labeling asbestos, and products produced therefrom, for sale to and use by the members of the general public as well as to other parties for use of the said products to manufacture and supply products therefrom.

**VII.**

At all times herein mentioned, defendants FIFTY-FIRST DOE through TWO HUNDRED TENTH DOE were Officers and Directors of named defendants herein as FIRST DOE through FIFTIETH DOE.

**VIII.**

The defendants, and each of them, acting through their agents, servants and/or employees, cause and have caused in the past, certain asbestos-containing products and asbestos-related materials, to be placed in the stream of commerce with the result that said products and materials came into contact and/or use by plaintiff.

**IX.**

Plaintiff Benjamin Lara was an electrician who, from the period 1963 to 1983 worked with and was exposed to asbestos, asbestos products and asbestos-related materials mined, manufactured, processed, imported, converted, compounded, sold and/or installed by the defendants, and each of them. During the course of his work plaintiff was exposed to asbestos and asbestos-containing materials at one or more of the following jobs:

//

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

GGREENWOOD/1232811,1

Complaint for Personal Injuries

4

1      (1)    From 1963 to 1965 while serving in the United States Navy as an electrician striker

2           and electrician mate aboard the *USS Klondike* (SD-22) and the *USS Mataco* (ATF-

3           86);

4      (2)    From 1965 to 1983 while working as a laborer, electrician helper and electrician at

5           Kaiser Steel in Fontana, California;

6      (3)    In 1968 while working as an electrician at Etiwanda Steel in Etiwanda, California.

7                                 **X.**

8      During the course and scope of his work, plaintiff was exposed to asbestos products and

9 asbestos-related materials of defendants, which exposure directly and proximately caused him to

10 develop an illness known and designated as mesothelioma.

11                                 **XI.**

12      The illness and disability of plaintiff are the direct and proximate result of the negligence of

13 the defendants, and each of them, in that they produced, sold and otherwise put into the stream of

14 commerce, the foregoing materials which the said defendants, and each of them, knew, or in the

15 exercise of ordinary care should have known, were deleterious, poisonous and highly harmful to

16 plaintiff's body, lungs, respiratory system, skin and health.

17                                 **XII.**

18      Plaintiff, exercising reasonable diligence, discovered the aforealleged conduct, misconduct

19 and culpability of defendants, and each of them, on or after May 2013, when informed of his

20 mesothelioma diagnosis by a physician.  Plaintiff could not have discovered such condition sooner

21 because such condition was brought about without noticeable trauma until it had advanced to such

22 a point that diagnosis could be made.  Such a diagnosis required the services of an expert, and

23 since plaintiff did not possess such expertise, he could not know, in the exercise of reasonable care,

24 of the cause of his injury until such time as he was diagnosed and advised.  Plaintiff could not

25 know, until such advice, of the culpability of the defendants, and each of them.

26                                 **XIII.**

27      As a direct and proximate result of the conduct of the defendants, and each of them,

28 plaintiff experienced and continues to experience prolonged pain and suffering, the necessity for

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

1  medical treatment, injuries including, but not limited to, mesothelioma, severe shock to his nervous

2  system, and other injuries, the exact extent of which are unknown to plaintiff.

3                                    **XIV.**

4        By reason of the aforesaid allegations, it has been necessary for plaintiff to engage the

5  services of physicians, surgeons, and hospitals; plaintiff does not know the reasonable value of said

6  services which were and are still reasonably required and will insert the reasonable value thereof

7  when such is ascertained, or as proven at trial.

8                                    **XV.**

9        By reason of the aforesaid allegations, plaintiff has been unable to follow his normal

10  gainful occupation for certain periods after the date of said events, and plaintiff has been disabled

11  for an indefinite time; plaintiff does not now know the value of the employment which has been

12  lost to him, and will insert the reasonable value thereof when such is ascertained, or as proven at

13  trial.

14                                   **XVI.**

15        By reason of the aforesaid negligence of defendants, and each of them, plaintiff has been

16  damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to

17  special damages herein alleged.

18        WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

19                         **SECOND CAUSE OF ACTION**

20                         **Breach of Implied Warranty**
                           **[Against All Product Defendants]**

21

22        AS AND FOR A SECOND CAUSE OF ACTION, plaintiff complains of PRODUCTS

23  defendants, and each of them, and alleges:

24                                    **I.**

25        The defendants sold and/or supplied asbestos and asbestos-related materials to plaintiff's

26  employers, and each defendant impliedly warranted that the said materials were of good and

27  merchantable quality and fit for their intended use.

28  //

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

**II.**

The implied warranty made by the defendants, and each of them, that the asbestos and asbestos-related materials were of good and merchantable quality for the particular intended use was breached in that certain harmful, poisonous and deleterious matter and particles were given off into the atmosphere wherein plaintiff and others in his position carried out their duties as workers working with such materials and other related materials.

**III.**

As a direct and proximate result of the breach of an implied warranty of good and merchantable quality and fitness for the particular intended use, plaintiff developed an illness, to wit: mesothelioma, which caused great disability, as previously set forth.

**IV.**

By reason of the aforesaid, plaintiff has been damaged to his health, strength, and activity in an amount in excess of $50,000.00 in addition to special damages herein alleged.

WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

**THIRD CAUSE OF ACTION**

**Strict Product Liability**
**Manufacturing Defect/Design Defect/Failure to Warn**
**[Against All Product Defendants]**

AS AND FOR A THIRD CAUSE OF ACTION, plaintiff complains of PRODUCTS defendants, and each of them, and alleges:

**I.**

At all times herein mentioned, plaintiff's employer or those entities that installed and/or handled the products to which plaintiff was exposed purchased from defendants, and each of them, asbestos and asbestos products hereinafter referred to as products that were defective in design, manufacturing, labeling, marketing and/or warning.

**II.**

Defendants, and each of them, knew that the aforementioned products would be used without inspection for design, manufacturing, labeling, marketing and/or warning defects by the user thereof.

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

7

GGREENWOOD/1232611.1

17

### III.

At all times mentioned herein, plaintiff reasonably was unaware of the dangerous nature of the aforementioned products.

### IV.

At all times mentioned herein, defendants, and each of them, were aware of the dangerous and defective nature of the design, manufacturing, labeling and/or marketing of the aforementioned products, when said products were used in the manner for which they were intended, and were aware that persons who foreseeably would be exposed to the asbestos-containing products were not aware of the dangerous and defective nature of the design, manufacture, labeling and/or marketing of the products, yet defendants took no action to warn or otherwise protect those who foreseeably would be exposed to said defective and improperly labeled products.

### V.

PRODUCTS defendants manufactured, distributed, and sold asbestos-containing products. The asbestos-containing products contained a manufacturing defect when they left PRODUCTS defendants' possession, and Plaintiff used those asbestos-containing products in a way that was reasonably foreseeable to defendants.

### VI.

The aforementioned products were defective in design because they did not perform as safely as an ordinary consumer would have expected them to perform. At the time plaintiff used the asbestos-containing products, they were substantially the same as when they left PRODUCTS defendants' possession; any change made to the asbestos-containing products after they left defendants' possession was reasonably foreseeable to defendants; the asbestos-containing products did not perform as safely as an ordinary consumer would have expected at the time of use; and Plaintiff used the products in the way that was reasonably foreseeable to PRODUCTS defendants.

### VII.

The aforementioned products lacked sufficient instructions and warnings of potential dangers. PRODUCTS defendants manufactured, distributed, and sold asbestos-containing products; those asbestos-containing products had potential dangers that were known or knowable

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

8

18

1  by the use of scientific knowledge available at the time of the manufacture, distribution, and sale of

2  the products; the potential hazards presented a substantial danger to Plaintiff; ordinary consumers

3  would not have recognized the potential dangers; PRODUCTS defendants failed to adequately

4  warn or instruct of the potential dangers; and these asbestos-containing products were used in a

5  way that was reasonably foreseeable to PRODUCTS defendants.

6                                                    VIII.

7           The aforementioned products were used by plaintiff in the manner for which they were

8  intended, or plaintiff foreseeably was exposed to said products when they were used in the manner

9  for which they were intended.

10                                                    IX.

11          As a direct and proximate result of the foregoing conduct, plaintiff developed an illness, to

12  wit:  mesothelioma, which caused great disability, as previously set forth.

13                                                    X.

14          As a proximate result of the defective design, manufacturing, labeling, marketing and/or

15  warning of the aforementioned materials and products, plaintiff was generally damaged as is more

16  fully set forth herein and in addition has sustained special damages hereinabove alleged.

17          WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

18                                        **FOURTH CAUSE OF ACTION**

19                                          **Fraud/Failure to Warn**
                                    **[Against All Product Defendants]**

20

21          AS AND FOR A FOURTH CAUSE OF ACTION, plaintiff complains of PRODUCTS

22  defendants, and each of them, and alleges:

23                                                    I.

24          At all times pertinent hereto, the defendants, and each of them, owed plaintiff a duty, as

25  provided for in Sections 1708 and 1710 of the Civil Code of the State of California, to abstain from

26  injuring the person, property or rights of the plaintiff.  In violation of that duty, the defendants, and

27  each of them, intentionally failed to warn, as set forth herein, thereby proximately causing injury to

28  the plaintiff as is more fully set forth herein.  Defendants' failure to warn consisted of acts falling

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

1   within Section 1710, and more specifically were the suppression of facts when a duty existed to

2   disclose it, all as are more fully set forth herein, and the violation of which as to any one such item

3   gave rise to a cause of action for violation of the rights of the plaintiff as provided for in the

4   aforementioned code sections.

5   **II.**

6          Since 1924, the defendants, and each of them, have known and have been possessed of the

7   true facts consisting of medical and scientific data and other knowledge which clearly indicated

8   that the materials and products referred to herein were and are hazardous to the health and safety of

9   the plaintiff, and others in plaintiff's position working in close proximity with such materials and

10  have known of the dangerous propensities of other of the aforementioned materials and products

11  prior to that time and with intent to deceive plaintiff, and others in his position and with intent that

12  he and such others should be and remain ignorant of such facts and with intent to induce plaintiff

13  and such others to alter his and their positions to his and their injury and/or risk and in order to

14  gain advantages did do the following acts:

15          a.      Defendants, and each of them, did not label any of the aforementioned asbestos-

16                  containing materials and products as to the hazards of such materials and products

17                  to the health and safety of plaintiff and others in plaintiff's position working in close

18                  proximity with such materials until 1964, when certain of such materials were

19                  labeled by some, but not all, of the defendants herein, when the knowledge of such

20                  hazards was existing and known to defendants, and each of them, since 1924;

21          b.      Defendants, and each of them, suppressed information relating to the danger of use

22                  of the aforementioned materials by requesting the suppression of information to the

23                  plaintiff and the general public concerning the dangerous nature of the

24                  aforementioned materials to workers by not allowing such information to be

25                  disseminated in a manner which would give general notice to the public and

26                  knowledge of the hazardous nature thereof when defendants were bound to disclose

27                  such information;

28  //

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

1    c.    Defendants, and each of them, sold the aforementioned products and materials to

2    plaintiff's employer and others without advising such employers and others of the

3    dangers of use of such materials to persons working in close proximity thereto,

4    when defendants knew of such dangers, as set forth herein, and, as set forth above,

5    had a duty to disclose such dangers;

6    d.    Defendants, and each of them, suppressed from everyone, including plaintiff and

7    plaintiff's employer, and continue to suppress, medical and scientific data and

8    knowledge of the accurate results of studies including, but not limited to,

9    suppressing information contained in the unpublished Lanza report by participating

10    in the influencing of A.J. Lanza to change his report, which altered version was

11    published in *Public Health Reports*, Volume 50 at page 1 in 1935, when they were

12    bound to disclose it unaltered, and by causing Asbestos Magazine, a widely

13    disseminated trade journal, to omit any mention of the dangers of inhaling asbestos

14    dust, thereby lessening the probability of notice of danger to those exposed to

15    asbestos, and thereby caused plaintiff to be and remain ignorant thereof;

16    e.    Defendants, and each of them, belonged to, participated in, and financially

17    supported the Asbestos Textile Institute and other industry organizations which

18    actively promoted the suppression of information of danger to users of the

19    aforementioned products and materials for and on behalf of defendants, and each of

20    them, thereby misleading plaintiff and plaintiff's employer to their prejudice through

21    the suggestions and deceptions set forth above in this cause of action.  The Dust

22    Control Committee, which changed its name to the Air Hygiene Committee, of the

23    Asbestos Textile Institute was specifically enjoined to study the subject of dust

24    control; discussions in such committee were held many times of (I) the dangers

25    inherent in asbestos and the dangers which arise from the lack of control of dust and

26    (ii) the suppression of such information from 1946 to a date unknown to plaintiff at

27    this time;

28    //

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

1  f.    Commencing in 1930 with the study of mine and mill workers at the Thetford

2        asbestos mines in Quebec, Canada, and the study of workers at Raybestos-

3        Manhattan plants in Manheim and Charleston, South Carolina, defendants knew and

4        possessed medical and scientific information of the connection between inhalation

5        of asbestos fibers and asbestosis, which information was disseminated through the

6        Asbestos Textile Institute and other industry organizations to all other defendants,

7        and each of them, herein. Between 1942 and 1950 the defendants, and each of them,

8        knew and possessed medical and scientific information of the connection between

9        inhalation of asbestos fibers and cancer, which information was disseminated

10       through the Asbestos Textile Institute and other industry organizations to all other

11       defendants herein.  Thereby, defendants suggested as a fact that which is not true

12       and disseminated other facts likely to mislead plaintiff and plaintiff's employer and

13       which did mislead them for want of communication of true facts which consisted of

14       the afore described medical and scientific data and other knowledge by not giving

15       plaintiff or plaintiff's employer the true facts concerning such knowledge of danger,

16       when defendants were bound to disclose it;

17  g.   Failed to warn plaintiff and plaintiff's employer of the nature of the said materials,

18       to wit:  dangerous when breathed, causing pathological effects without noticeable

19       trauma, when possessed with knowledge that such material was dangerous and a

20       threat to the health of persons coming into contact therewith and under a duty to

21       disclose it;

22  h.   Failed to provide plaintiff with information concerning adequate protective masks

23       and devices for use with and application and installation of the products of the

24       defendants, and each of them, when they knew that such protective measures were

25       necessary, when they were under a duty to disclose such information, and if not

26       advised as to use would result in injury to the plaintiff and others applying and

27       installing such materials;

28  //

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

12

22

1    i.    Concealed from plaintiff the true nature of the industrial exposure of plaintiff, the

2    fact that they and each of them, knew that plaintiff and anyone similarly situated,

3    upon inhalation of asbestos would, in time develop irreversible conditions of either

4    pneumoconiosis, asbestosis or cancer, or all, and such person would immediately be

5    in not good health, the fact that he had in fact been exposed to harmful materials

6    and the fact that the materials to which he was exposed would cause pathological

7    effects without noticeable trauma, when under a duty to and bound to disclose it;

8    I.    Failed to provide information to the public at large and buyers, users and physicians

9    employed by plaintiff and plaintiff's employer for the purpose of conducting

10    physical examinations of plaintiff and others working in contact with asbestos as to

11    the true nature of the hazards of asbestos, in order for such physicians to diagnose,

12    and treat workers coming into contact with asbestos, in that the materials to which

13    plaintiff had been exposed would cause pathological effects without noticeable

14    trauma, when under a duty to supply such information and such failure is likely to

15    mislead for want of communication of such facts; and

16                           **III.**

17    Each of the foregoing acts and forbearances to act when a duty existed to act, the said

18    defendants, and each of them, having such knowledge, knowing plaintiff did not have such

19    knowledge and would breathe such material innocently, was done falsely and fraudulently and with

20    full intent to induce plaintiff to work in a dangerous environment and to cause plaintiff to remain

21    unaware of the true facts, all in violation of Section 1710 of the Civil Code of the State of

22    California.

23                           **IV.**

24    Plaintiff relied upon the said acts and forbearances; had plaintiff known the true facts, they

25    would not have continued to work in the said environment.

26                           **V.**

27    By reason of the aforesaid premises, plaintiff has been damaged in his health, strength and

28    activity in addition to special damages herein above alleged.

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

1

**VI.**

2      Plaintiff had no knowledge that the foregoing acts were actionable at law when they were

3   committed, and cannot be charged with knowledge or inquiry thereof.

4      WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

5                           **FIFTH CAUSE OF ACTION**

6                     **Conspiracy to Defraud/Failure to Warn**
                       **[Against All Product Defendants]**

7

8      AS AND FOR A FIFTH CAUSE OF ACTION, plaintiff complains of PRODUCTS

9   defendants, and each of them, and alleges:

10                              **I.**

11     At all times mentioned, the defendants, and each of them, knowingly and willfully

12   conspired and agreed among themselves to perpetrate upon plaintiff the acts complained of as set

13   forth in the First and Fourth Causes of Action as are incorporated herein.

14                              **II.**

15     Defendants, and each of them, did the acts and things herein alleged in Paragraph II of the

16   Fourth Cause of Action, incorporated herein, in furtherance of the conspiracy and agreement as herein

17   alleged and did further conspire to violate State and Federal laws and regulations, the exact nature

18   and extent of which are unknown at this time, but known full well to defendants and each of them.

19                              **III.**

20     By reason of the aforesaid acts of defendants, and each of them, plaintiff has suffered

21   damage to his health, strength and activity.

22     WHEREFORE, plaintiff prays judgment as is hereinafter set forth.

23                           **SIXTH CAUSE OF ACTION**

24                     **Conspiracy/Concert of Action**
                       **[Against Metropolitan Life Insurance Company**
25                     **and Does 211-275, Inclusive]**

26                              **I.**

27     Plaintiff hereby incorporates by reference each and every allegation of the preceding causes

28   of action herein. (As used throughout this cause of action, "plaintiff" refers to all named plaintiffs

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

24

1   and/or all named decedents from whom the named plaintiffs' injuries may derive.)

2   **II.**

3   The term "conspirators" as used in this cause of action includes, but is not limited to,

4   METROPOLITAN LIFE INSURANCE COMPANY ("MET LIFE"), Anthony Lanza, M.D.,

5   Johns-Manville Corporation ("Manville"), Raybestos-Manhattan Corporation ("Raybestos") and

6   the other entities and individuals identified in this cause of action.

7   **III.**

8   Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned

9   defendant METROPOLITAN LIFE INSURANCE COMPANY was and is a corporation organized

10  and existing under and by virtue of the laws of the State of New York or the laws of some other

11  state or foreign jurisdiction, and that this defendant was and is authorized to do and/or was and is

12  doing business in the State of California, and regularly conducted or conducts business in the

13  County of Alameda, State of California.  At times relevant to this cause of action, MET LIFE was

14  an insurer of Manville and Raybestos.

15  **IV.**

16  Plaintiff was exposed to asbestos-containing dust created by the use of the asbestos

17  products manufactured, distributed and/or supplied by one or more of the conspirators named

18  below.  The exposure to the asbestos or asbestos-related products supplied by the conspirators(s)

19  caused plaintiff's asbestos-related disease, injuries and/or death.

20  **V.**

21  The conspirators, individually and as agents of one another and as co-conspirators, agreed

22  and conspired among themselves, with other asbestos manufacturers and distributors, with certain

23  individuals including but not limited to Anthony Lanza, M.D. ("Lanza") and with defendant MET

24  LIFE to injure plaintiff in the following fashion (the following is not an exclusive list of the

25  wrongful acts of the conspirators, but, rather, is a representative list):

26  (a)    Beginning in 1929, MET LIFE entered agreements with Manville and others to

27  fund studies of the effects of asbestos exposure on Canadian asbestos miners.  When the data from

28  these studies proved that Canadian asbestos miners were developing asbestosis, MET LIFE,

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

15

GGREENWOOD/1232611.1

1   Manville and others suppressed its publication; further, Lanza (then a MET LIFE employee)

2   actively misrepresented the results of the Canadian study for many years thereafter to meetings of

3   health-care professionals seeking information regarding asbestos exposure.

4       (b)    In approximately 1934, conspirators Manville and MET LIFE, through their agents

5   Vandiver Brown and attorney J.C. Hobart, and conspirator Raybestos, through its agents Sumner

6   Simpson and J. Rohrback, suggested to MET LIFE associate director Lanza that Lanza publish a

7   study on asbestosis in which Lanza would affirmatively misrepresent material facts and

8   conclusions about asbestos, including but not limited to descriptions of the seriousness of the

9   asbestosis disease process. The misrepresentation was accomplished through intentional deletion

10   of Lanza's description of asbestosis as "fatal" and through other selective editing that affirmatively

11   misrepresented asbestosis as a disease process less critical than it was known to be by the

12   conspirators. As a result, Lanza's study was published in the medical literature in 1935 with these

13   misleading statements. The conspirators were motivated to effectuate this fraudulent

14   misrepresentation and fraudulent non-disclosure in part by the desire to influence proposed

15   legislation to regulate asbestos exposure, to provide a defense in lawsuits involving Manville,

16   Raybestos and MET LIFE (as Mansville's and Raybestos's insurer), and to promote the use of

17   Manville's and Raybestos's asbestos products.

18       (c)    The above-described conspiracy continued in 1936, when additional co-conspirators

19   American Brake Block Corporation, Asbestos Manufacturing Company, Gatke Corporation,

20   Manville, Keasbey & Mattison Company (then an alter ego to conspirator Turner & Newall),

21   Raybestos, Russell Manufacturing (whose liabilities have been assumed by H.K. Porter Company),

22   Union Asbestos and Rubber Company and United States Gypsum Company entered into an

23   agreement with a leading medical research facility, the Saranac Laboratories. Under the

24   agreement, the conspirators acquired the power to decide what information Saranac Laboratories

25   could publish regarding asbestos disease and could also control in what form such publications

26   were to occur. Their agreement provided these conspirators the power and ability to affirmatively

27   misrepresent the results of the work at Saranac Laboratories, and also gave these conspirators

28   power to suppress material facts included in any of the facility's studies. On numerous occasions

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

1  thereafter, the conspirators exercised their power to prevent Saranac scientists from disclosing

2  material scientific data, resulting in numerous misstatements of fact being made at scientific

3  meetings concerning the health effects of asbestos exposure.

4      (d)    The conspiracy was furthered when on November 11, 1948 representatives of the

5  following conspirators met at Manville headquarters: Manville, American Brake Block Division of

6  American Brake and Shoe Foundry, Gatke Corporation, Keasbey & Mattison Company (then an

7  alter ego of conspirator Turner & Newall), Raybestos, Thermoid Company (whose assets and

8  liabilities were later purchased by H.K. Porter Company), Union Asbestos and Rubber Company,

9  United States Gypsum Company and MET LIFE. U.S. Gypsum did not send a company employee

10  to the meeting, but instead authorized Vandiver Brown of Manville to represent its interest at the

11  meeting and to take action on its behalf.

12      (e)    At the November 11, 1948 meeting, these conspirators and their representatives

13  decided to exert their influence to materially alter and misrepresent material facts about the

14  substance of research conducted by Dr. Leroy Gardner at the Saranac Laboratories beginning in

15  1936. Dr. Gardner's research involved the carcinogenicity of asbestos in mice and also included an

16  evaluation of the health effects of asbestos on humans with a critical review of the then-existing

17  standards for asbestos-dust exposure.

18      (f)    At this meeting, these conspirators intentionally and affirmatively decided that

19  Dr. Gardner's work should be edited to delete material facts about the cancer-causing propensity of

20  asbestos, the health effects of asbestos on humans and the critique of the dust standards. The

21  conspirators then published these deceptive and fraudulent statements in the medical literature as

22  edited by Dr. Vorwald. These conspirators thereby fraudulently misrepresented the risks of

23  asbestos exposure to both the public and the class of persons exposed to asbestos, including

24  plaintiff.

25      (g)    As a direct result of influence exerted by the conspirators, a Dr. Vorwald in 1951

26  published Dr. Gardner's edited work in *The Journal of Industrial Hygiene, AMA Archives of*

27  *Industrial Hygiene and Occupational Health* in a form that stressed those portions of Dr. Gardner's

28  work that the conspirators wished to be stressed, but that omitted reference to human asbestosis

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries          17

1   and cancer, thereby fraudulently and affirmatively misrepresenting the extent of asbestos's risks.

2   The conspirators affirmatively and deliberately disseminated this deceptive and fraudulent Vorwald

3   publication to university libraries, government officials, government agencies and others.

4       (h)    Such actions constitute a material affirmative misrepresentation of the total context

5   of material facts involved in Dr. Gardner's work and resulted in creating an appearance that

6   inhalation of asbestos was less of a health problem than Dr. Gardner's unedited work indicated.

7       (i)    When Dr. Vorwald subsequently tried to publish more complete information

8   regarding Dr. Gardner's animal studies, the conspirators required his discharge from the Saranac

9   Laboratories, denied him permission to publish or complete Dr. Gardner's work and actively

10   discouraged institutions of higher learning from hiring or retaining Dr. Vorwald in any capacity.

11       (j)    The following conspirators were members of the trade association known as Quebec

12   Asbestos Mining Association (Q.A.M.A.): Manville, Carey-Canada individually and as successor

13   to Quebec Asbestos Corporation, the Celotex Corporation as successor to Quebec Asbestos

14   Corporation, National Gypsum Company and Turner & Newall as successor to Bell Asbestos.

15   These conspirators, members of Q.A.M.A., participated in the above-described misrepresentation

16   of the work of Dr. Leroy Gardner published by Arthur Vorwald in the *AMA Archives of Industrial*

17   *Health* in 1951. Evidence of the Q.A.M.A.'s involvement in this misrepresentation arises from co-

18   conspirator Manville's membership in the Q.A.M.A., as well as correspondence from co-

19   conspirators dated 1/29/47, 11/26/47, 3/6/48, 10/15/48, 3/8/49 and 9/6/50, all indicating close

20   monitoring of the editing process by Q.A.M.A.'s representative, Ivan Sabourin, who acted on

21   behalf of all Q.A.M.A. members.

22       (k)    In furtherance of the conspiracy that commenced in 1929, conspirators who were

23   members of the Q.A.M.A. as described above began in about 1950 to formulate a plan to influence

24   public opinion concerning the relationship between asbestos and cancer by influencing the medical

25   literature on this subject and then touting and disseminating this literature to the public and to

26   organizations and legislative bodies responsible for regulatory control of asbestos with the specific

27   intent of misrepresenting the existing scientific information and suppressing contrary scientific

28   data in their possession and control.

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
55 HARRISON STREET,
JACK LONDON MARKET
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

18

28

1     (l)    This plan of misrepresentation and influence over the medical literature began in

2  about 1950 when the aforementioned Q.A.M.A. members selected Saranac Laboratories to do an

3  evaluation of whether cancer was related to asbestos.  After a preliminary report authored by

4  Arthur Vorwald in 1952 indicated that, based on experiments with laboratory animals,  a

5  cancer/asbestos relationship might exist, these Q.A.M.A. members refused to further fund the

6  study, terminated the study and prevented any public discussion or dissemination of the results.

7     (m)   As a result of the termination of the Q.A.M.A./Saranac study, the conspirators

8  fraudulently withheld information from the public and affirmatively misrepresented to the public

9  and responsible legislative and regulatory bodies that asbestos did not cause cancer.  These

10  affirmative misrepresentations were made by conspirators and conspirators' agents K.W. Smith,

11  M.D., Paul Cartier, M.D., A.J. Vorwald, M.D., Lanza, Vandiver Brown and Ivan Sabourin and

12  were directed to, among others, U.S. government officials, Canadian government officials, the U.S.

13  National Cancer Institute, medical organizations, health professionals and the general public,

14  including plaintiff.

15     (n)    The Q.A.M.A. conspirators subsequently contracted with the Industrial Hygiene

16  Foundation and Dr. Daniel Braun to further study the relationship between asbestos exposure,

17  asbestosis and lung cancer.  In 1957, Drs. Braun and Truan (Braun and Truan) reported to the

18  Q.A.M.A. that asbestosis did increase a worker's risk of developing lung cancer.

19     (o)    The Q.A.M.A. conspirators, in furtherance of the conspiracy that began in 1929,

20  caused the work by Braun and Truan to be published in 1958, but with the findings concerning the

21  increased incidence of cancer in asbestos-exposed persons edited out and stricken by agents of the

22  Q.A.M.A.  The published version of the Braun/Truan study contained a conclusion that asbestos

23  exposure alone did not increase the incidence of lung cancer, a conclusion known by the

24  conspirators to be false.

25     (p)    By falsifying and causing publication of studies concluding that asbestos exposure

26  did not cause lung cancer and simultaneously omitting documented findings that asbestosis did

27  increase the risk of lung cancer, the conspirators affirmatively misrepresented to, and concealed

28  from, the public the extent of the risks associated with inhaling asbestos fibers.

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

19

1      (q)      In furtherance of the ongoing 1929 conspiracy, the Q.A.M.A. in about 1958

2   publicized the fraudulently edited works of Drs. Braun and Truan at a symposium in an effort to

3   fraudulently misrepresent to the public and persons exposed to asbestos that inhaling asbestos

4   fibers did not cause cancer.

5      (r)      The foregoing fraudulent misrepresentations, which began in 1929 and continued

6   with the publication in 1958 of the Braun/Truan study, influenced the standards set for acceptable

7   levels of asbestos exposure.  The developers of such standards failed to lower the maximum

8   exposure limits because a cancer risk associated with asbestos inhalation had not been proven.

9      (s)      In furtherance of the 1929 conspiracy, Q.A.M.A. conspirators decided at their trade

10   association meeting in 1967 that they would intentionally mislead consumers about the extent of

11   risks associated with inhaling asbestos.

12      (t)      In furtherance of the 1929 conspiracy, a symposium concerning the health effects of

13   asbestos was conducted at the Saranac Laboratories in 1952.  The following conspirators were in

14   attendance: MET LIFE, Lanza, Manville, Turner & Newall, Raybestos and Q.A.M.A. members

15   through their agents Cartier, Sabourin and LaChance.

16      (u)      At the 1952 Saranac meeting, the occurrence of lung cancer and asbestosis in

17   product users was discussed, as was the carcinogenic properties of all asbestos-fiber types.  In an

18   affirmative attempt to mislead the public about the extent of health risks associated with asbestos,

19   and in an effort to fraudulently conceal those risks from the public, these conspirators conspired to

20   prevent publication of the record of this 1952 Saranac Symposium, and it was not published.  In

21   addition, the conspirators induced Vorwald not to announce the results of his and Dr. Gardner's

22   laboratory studies showing excess cancers in asbestos-exposed animals.  The conspirators in this

23   way fraudulently misrepresented existing secret data that was prevented from being publicized

24   because of the secrecy provisions contained in the previously described 1936 Saranac agreement.

25      (v)      The following co-conspirators were members of the trade organization known as

26   The Asbestos Textile Institute (ATI):  Raybestos, Manville, H.K. Porter, Keasbey & Mattison

27   (individually and through its alter ego, Turner & Newall), National Gypsum, Uniroyal, Inc.

28   //

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

20

1   (individually and through its alter egos, CDU Holding Company), Uniroyal Holding Company,

2   Uniroyal Goodrich Tire Company and Asbestos Corporation, Ltd..

3       (w)     In furtherance of the foregoing conspiracy, the conspirators and ATI members in

4   1942 received a report from W.C.L. Hemeon (Hemeon) concerning asbestos that suggested the

5   then-existing maximum asbestos-exposure limits be re-evaluated.  These conspirators caused the

6   Hemeon report not to be published and thereby fraudulently concealed material facts about

7   asbestos exposure from the public and affirmatively misrepresented to the public and class of

8   persons exposed to asbestos that the then-existing maximum asbestos-exposure limit was safe and

9   acceptable.  Thereafter, these conspirators withheld additional material information on the dust

10  standards from the American Conference of Governmental Industrial Hygienists (ACGIH), thereby

11  further influencing ACGIH evaluations of its Threshold Limit Values for asbestos exposure.

12      (x)     In furtherance of the foregoing conspiracy, co-conspirator National Gypsum,

13  through its agents and following an inquiry from the Indiana Division of Industrial Hygiene (IDIH)

14  concerning the health hazards of asbestos-spray products, in 1953 refused to mail a proposed

15  response to the IDIH indicating that those applying the products should wear respirators when

16  doing so.  National Gypsum's response distorted and fraudulently misrepresented the need for

17  applicators of asbestos-spray products to wear respirators, and thereby misrepresented the risks

18  associated with asbestos exposure.

19      (y)     In furtherance of the foregoing conspiracy, conspirator Manville through its agent

20  Kenneth Smith in 1955 caused to be published in *The AMA Archives of Industrial Health* an article

21  entitled "Pulmonary Disability in Asbestos Workers."  This published study materially altered the

22  results of an earlier study in 1949 concerning the same set of workers.  This alteration of Dr.

23  Smith's study constituted a fraudulent and material misrepresentation about the extent of the risk

24  associated with inhaling asbestos.

25      (z)     In furtherance of the foregoing conspiracy, the National Cancer Institute in 1955

26  held a meeting at which conspirator Manville, individually and as agent for other co-conspirators,

27  and A. Vorwald, as agent of all the conspirators, affirmatively misrepresented that there was no

28  existing animal study indicating any relationship between asbestos exposure and cancer when, in

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

21

1  fact, the conspirators secretly possessed several suppressed studies positively demonstrating the

2  existence of such a link.

3      (aa)    In furtherance of the foregoing conspiracy, these conspirators and members of the

4  ATI in 1957 jointly rejected a proposed research study on cancer and asbestos, and this resulted in

5  their fraudulently concealing from the public material facts regarding asbestos exposure and also

6  constituted an affirmative misrepresentation of the then-existing knowledge about asbestos

7  exposure and lung cancer.

8      (bb)    In furtherance of the foregoing conspiracy, conspirators who in 1964 were members

9  of the ATI met to formulate a plan for rebutting the association between lung cancer and asbestos

10  exposure that had been recently published by Dr. Irving J. Selikoff of the Mount Sinai Research

11  Center.  These members of the ATI thereafter embarked on a campaign to further misrepresent the

12  association between asbestos exposure and lung cancer.

13      (cc)    The conspirators founded and funded the Mellon Institute and the Industrial

14  Hygiene Foundation (IHF) to research issues concerning the health effects of inhaling asbestos dust

15  and for the express purpose of delaying or preventing compensation to workers who suffered

16  asbestos disease.  Beginning in the early 1940's, the IHF was involved in a study by Dr. Hemeon

17  entitled "Report of Preliminary Dust Investigation for Asbestos Textile Institute," which was

18  published in June 1947.  This study was conducted in conjunction with members of the Asbestos

19  Textile Institute and found that workers exposed to less than the recommended maximum asbestos-

20  exposure levels were nonetheless developing disease.  As a part of the conspiracy, the IHF never

21  published this study.

22      (dd)    Beginning in the mid-1950's, the IHF and Mellon Institute were involved in the

23  publication of works by Braun and Truan entitled "An Epidemiological Study of Lung Cancer in

24  Asbestos Miners."  In its original, unedited form in September 1957, this study concluded that

25  workers with asbestosis had an increased incidence of lung cancer and that the Canadian

26  government had been under-reporting occurrences of asbestosis.  The final, published version of

27  this study in June 1958 deleted the conclusion that workers with asbestosis suffered an increased

28  incidence of lung cancer and that the Canadian government had been under-reporting asbestosis

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

1   cases. The IHF and the Mellon Institute conspired with the members of the Quebec Asbestos

2   Mining Association (Q.A.M.A.) and their legal counsel, Ivan Sabourin, and other conspirators to

3   suppress the above-described information concerning asbestos and cancer.

4        (ee)    The above-described actions of the IHF and the Mellon Institute constituted

5   intentional deception and fraud in actively misleading the public about the extent of the hazards

6   linked to breathing asbestos dust. These actions also substantially contributed to retarding the

7   development of knowledge about the hazards of asbestos and thereby substantially contributed to

8   injuries suffered by plaintiffs.

9        (ff)    From the early 1920's until the 1970's, Manville, Raybestos and other conspirators

10   undertook continual and systemic monitoring of the workers employed in their plants

11   manufacturing asbestos products. The monitoring included chest x-rays taken for the purpose of

12   discovering whether the workers were suffering from asbestosis or other asbestos diseases. MET

13   LIFE and Lanza actively assisted and participated in many of the monitoring programs. The

14   conspirators, including MET LIFE, failed to disclose and actively concealed the results of the

15   monitoring. The conspirators also failed to disclose the nature, extent and frequency of asbestos

16   disease among the workers and instead encouraged the workers to continue work until they were

17   completely and totally disabled. The conspirators further intentionally concealed from the workers

18   employed in their manufacturing plants the nature and extent of the risks associated with asbestos

19   exposure.

20        (gg)    All conspirators identified herein approved, ratified and furthered the previous

21   conspiratorial acts of conspirators Manville, Raybestos, Lanza and MET LIFE, and all the alleged

22   conspirators during the time and circumstances previously described acted as agents and co-

23   conspirators of the other conspirators.

24        (hh)    MET LIFE was an active participant in the foregoing conspiracy and benefitted

25   thereby. MET LIFE benefitted from its involvement in the conspiracy in the following non-

26   exclusive list of ways, among others:

27        (i)    By providing workers' compensation insurance to co-conspirators.

28        (ii)    By providing life insurance for employees of the co-conspirators.

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

1  (iii)  By providing health insurance or health care for the employees of the co-
2         conspirators.

3  (iv)   By purchasing substantial stock in asbestos-related companies, including
4         stock of the co-conspirators.

5  (v)    By developing information by which asbestos-related claims for
6         compensation could be defeated.

## VI.

8    The previously described acts of the conspirators constitute fraudulent concealment and/or

9  fraudulent misrepresentation, which caused injury to the plaintiff in the following ways, among

10 others:

11    (a)    The material published or caused to be published by the conspirators was false and

12 incomplete in that the conspirators knowingly and deliberately deleted references to the known

13 health hazards of asbestos and asbestos-related products.

14    (b)    The conspirators individually, as members of a conspiracy and as agents of other

15 conspirators, intended to – and did – publish false and misleading reports that misrepresented or

16 failed to disclose known health hazards associated with common uses of asbestos-containing

17 products. Their purposes were to (1) maintain a favorable business climate for the continued sale

18 and distribution of asbestos and asbestos-related products, (2) assist in the conspirators' continued

19 pecuniary gain through the sale of their products, (3) influence proposed legislation to regulate

20 asbestos exposure in a way that favored the conspirators' interests and (4) aid in defending lawsuits

21 seeking compensation for injury resulting from asbestos exposure.

22    (c)    Plaintiff and others reasonably relied, both directly and indirectly, on the published

23 medical and scientific data documenting the purported safety of asbestos and asbestos-related

24 products, and also on the absence of published medical and scientific reports of the hazards of

25 continued exposure to asbestos. Plaintiff believed asbestos to be safe and was unaware of the

26 hazards of that material because of the conspiratorial conduct described herein.

27    (d)    Conspirators – individually, as members of a conspiracy and as agents of other co-

28 conspirators – were and are in a position of superior knowledge regarding the health hazards of

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

24

1 asbestos and therefore the plaintiff reasonably relied (both directly and indirectly) on the published

2 reports commissioned by the conspirators regarding the health hazards of asbestos and the absence

3 of published information (because of the suppression by the conspiracy) concerning the hazards of

4 asbestos and asbestos-related products.

5     (e)    As a direct result of the continuing and ongoing conduct of the conspirators, as

6 alleged herein, the plaintiff contracted asbestos-related disease, and plaintiff suffered injuries and

7 incurred damages as described in greater detail elsewhere in the complaint.

8 **VII.**

9     MET LIFE acted in concert with the foregoing parties (the conspirators) and pursuant to a

10 common design, as previously delineated, to cause injury to plaintiff.

11 **VIII.**

12     MET LIFE knew that the conduct of Manville, Raybestos and the other conspirators was

13 coercive, fraudulent and deceitful toward others (including plaintiff) and that conspirators' conduct

14 was a breach of duty or duties owed to plaintiff; and MET LIFE gave substantial assistance and

15 encouragement to Manville and the other conspirators in breaching their duties to plaintiff and

16 others.

17 **IX.**

18     Plaintiff was insured, directly or indirectly, by MET LIFE and as such was owed a fiduciary

19 duty by MET LIFE that was breached by MET LIFE's foregoing conduct and conspiracy, thereby

20 causing plaintiff's asbestos-related injuries.

21 **X.**

22     The conspirators made representations to plaintiff and others concerning asbestos-

23 containing products, including but not limited to:

24     (a)    the statements set forth and summarized in the foregoing paragraphs;

25     (b)    that asbestos in commercially used insulation products was not hazardous (this

26 statement was known to be false by the conspirators);

27     (c)    that the amount of asbestos in the air necessary to cause disease was five million

28 particles per cubic foot (this statement was known to be false by the conspirators);

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

1     (d)    that asbestos does not cause cancer (this statement was known to be false by the

2    conspirators).

3       In addition, the conspirators actively concealed facts from the plaintiff and others, including

4  but not limited to:

5     (a)    that asbestos-related disease can be a fatal disease;

6     (b)    that asbestos causes various forms of lung cancer;

7     (c)    that individuals should protect themselves from breathing asbestos dust;

8     (d)    the extent of asbestos disease in exposed populations;

9     (e)    information regarding the levels of airborne asbestos that can cause disease;

10    (f)    their experience with workers' compensation claims related to asbestos exposure;

11         and

12    (g)    the concealment described in the other paragraphs of this cause of action.

13                  **XI.**

14      The conspirators further knew that their foregoing statements were false and that, by their

15  acts, they were actively concealing adverse information concerning the health effects of asbestos,

16  including the facts described in the preceding paragraphs of this cause of action.  The conspirators

17  made these false statements and concealed these facts with the intent to deceive.  The plaintiff and

18  others relied both directly and indirectly on the foregoing false statements and their lack of

19  knowledge resulting from the conspirators' fraudulent concealment.  As a consequence of the

20  foregoing fraudulent misrepresentations and concealment, plaintiff was injured and damaged as

21  more fully described elsewhere in the complaint.

22                  **XII.**

23      The asbestos-containing products that conspirators manufactured, marketed, distributed,

24  sold and otherwise supplied were defective in that they caused plaintiff and others similarly

25  situated to be exposed to the products' asbestos content and thereby caused the injuries and

26  damages as more fully detailed elsewhere in the complaint.

27  //

28  //

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA  94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

## XIII.

Additionally and alternatively, as a direct result of defendants' and conspirators' (including, without limitation, MET LIFE's) actions and omissions, plaintiff was caused to remain ignorant of all the dangers of asbestos, which resulted in plaintiff, his agents, employers, and the general public being unaware of the true and full dangers of asbestos. Defendants' and conspirators' actions and omissions also deprived plaintiff of the opportunity to decide for themselves whether they wanted to take the risk of being exposed to asbestos, denied plaintiff the opportunity to take precautions against the dangers of asbestos and caused plaintiff's damages as described elsewhere in this complaint.

## XIV.

The foregoing conduct of defendants and the conspirators was despicable, willful and carried on in conscious disregard of the rights or safety of plaintiff. Defendants and the conspirators intended by such conduct to conceal and/or misrepresent material facts known to them for the purpose of thereby depriving plaintiff and others of property or legal rights, or otherwise causing injury. So in addition to actual damages, plaintiff is entitled to recover damages from defendants and the conspirators for the sake of example and by way of punishing defendants and conspirators.

WHEREFORE, plaintiff prays judgments against defendants, conspirators and their "alternate entities," and each of them, as hereinafter set forth.

## SEVENTH CAUSE OF ACTION

### Loss of Consortium
### [Against All Defendants]

AS AND FOR A SEVENTH CAUSE OF ACTION, plaintiff Mary Lara complains of all defendants, and each of them, and alleges:

## I.

This plaintiff, for and on behalf of herself, brings this action on her own behalf.

//

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

GGREENWOOD/1232611.1

Complaint for Personal Injuries

27

37

## II.

Plaintiff refers to and incorporates herein by reference the First through Sixth Causes of Action of this complaint.

## III.

At the time that plaintiff Benjamin Lara sustained injury as more fully alleged in all the previous causes of action, and at all times thereafter, plaintiff Mary Lara was the wife of plaintiff Benjamin Lara.

## IV.

Prior to said injuries, plaintiff Benjamin Lara was able to and did perform his duties as the husband of plaintiff Mary Lara. Plaintiff is informed and believes, and thereon alleges, that subsequent to said injuries and as a proximate result thereof, plaintiff Benjamin Lara has been, and some time in the future will be, incapacitated and unable to perform the necessary duties as husband of plaintiff Mary Lara and the work and service usually performed in the care, maintenance and management of the family home.

## V.

As a proximate result of said injuries, plaintiff Mary Lara has been and will be deprived of consortium with plaintiff Benjamin Lara, including the performance of her husband's duties and on plaintiff's part will be required to perform the duties previously performed by plaintiff Benjamin Lara, all to plaintiff's damage in a sum which cannot be ascertained at this time. Plaintiff requests the right to amend this complaint to allege the amount of said damages when they are ascertained.

WHEREFORE, plaintiff Mary Lara prays judgment as follows:

1.     General damages in an amount in excess of $50,000.00 in accordance with the proof;

2.     Damages for fraud and conspiracy in an amount in excess of $50,000.00 in accordance with the proof;

3.     Punitive and exemplary damages in an amount found appropriate by the trier of fact in accordance with the proof of malice, oppression or fraud supporting plaintiffs' causes of action;

4.     Special damages in accordance with the proof;

KAZAN, MCCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

Complaint for Personal Injuries

1     5.    Prejudgment interest and post-judgment interest in accordance with law;

2     6.    Costs of suit; and

3     7.    Such other and further relief as the Court deems just and proper in the premises.

4     WHEREFORE, plaintiff Benjamin Lara prays judgment against defendants, conspirators

5  and their "alternate entities," and each of them as follows:

6     1.    General damages in an amount in excess of $50,000.00 – including, without

7  limitation, non-economic damages and damages for plaintiff's pain, suffering, loss of enjoyment of

8  life and all other recoverable non-economic loss – in accordance with the proof;

9     2.    Damages for fraud and conspiracy in an amount in excess of $50,000.00 in

10  accordance with the proof;

11     3.    Punitive and exemplary damages in an amount found appropriate by the trier of fact

12  in accordance with the proof of malice, oppression or fraud supporting plaintiffs' causes of action;

13     4.    Special damages – including, without limitation, economic damages and damages

14  for past and future medical expenses, lost earnings and earnings capacity, lost household services

15  and all other recoverable economic loss – in accordance with the proof;

16     5.    Prejudgment interest and post-judgment interest in accordance with law;

17     6.    Costs of suit; and

18     7.    Such other and further relief as the Court deems just and proper in the premises.

19

20  DATED: July 5, 2013        KAZAN, McCLAIN, SATTERLEY, LYONS,

21                     GREENWOOD & OBERMAN

                        A Professional Corporation

22

23               By:

                        Gordon D. Greenwood

24               Attorneys for Plaintiff

KAZAN, McCLAIN,
SATTERLEY,
LYONS,
GREENWOOD &
OBERMAN,
A PROFESSIONAL LAW
CORPORATION
JACK LONDON MARKET
55 HARRISON STREET,
SUITE 400
OAKLAND, CA 94607
(510) 302-1000
FAX (510) 835-4913

25

26

27

28

Complaint for Personal Injuries

1   TUCKER ELLIS LLP
    Anthony D. Brosamle – SBN 208664
2   anthony.brosamle@tuckerellis.com
    Jenny-Anne S. Flores – SBN 273364
3   jenny-anne.flores@tuckerellis.com
    515 South Flower Street
4   Forty-Second Floor
    Los Angeles, CA 90071-2223
5   Telephone:      213.430.3400
    Facsimile:      213.430.3409
6
    TUCKER ELLIS LLP
7   Nicole E. Gage – SBN 208658
    nicole.gage@tuckerellis.com
8   135 Main St., Suite 700
    San Francisco, CA 94105
9   Telephone:      415.617.2400
    Facsimile:      415.617.2409
10
11  Attorneys for Defendant
    ROCKWELL AUTOMATION, INC.
12

CONFORMED COPY
ORIGINAL FILED
Superior Court Of California
County Of Los Angeles

JUL 2 9 2013

John A. Clarke, Executive Officer/Clerk
By: Tanaya Lewis, Deputy

13          SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                    COUNTY OF LOS ANGELES

15  Coordination Proceeding
    Special Title (Rule 3.550)
16                                         Judicial Council Coordination Proceeding
    LAOSD ASBESTOS CASES                   No.: JCCP 4674
17

18  BENJAMIN LARA, JR. and MARY LARA,      Case No. BC514487

19                Plaintiffs,              Judge: Hon. Emilie H. Elias – Dept: 324

20          v.                             DEFENDANT ROCKWELL AUTOMATION,
                                           INC.'S ANSWER TO PLAINTIFFS'
21  CBS CORPORATION, et al.,               COMPLAINT FOR PERSONAL INJURIES;
                                           DEMAND FOR JURY TRIAL
22                Defendants.
                                           Action Filed:  July 9, 2013
23                                         Trial Date:    None

24

25                          GENERAL DENIAL

26      1.      For its answer to the unverified Complaint filed by Plaintiffs BENJAMIN LARA, an

27  individual and MARY LARA, an individual ("Plaintiffs"); Defendant ROCKWELL AUTOMATION,

28  INC., (hereinafter "Rockwell" or "Defendant"), answering solely on its own behalf and for no other

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL
INJURIES; DEMAND FOR JURY TRIAL
918781.1

person or party, files this general denial pursuant to Code of Civil Procedure section 431.30 and hereby denies each and every, all and singular, generally and specifically, of the allegations contained in Plaintiffs' Complaint and further specifically denies that Plaintiffs have been injured in any way or damaged in any sum or amount or manner or way alleged, and specifically denies any liability or fault whatsoever with respect to the matters, acts or omissions set forth, alleged, or complained of in Plaintiffs' Complaint.

## AFFIRMATIVE DEFENSES

2.     As for and for its separate, distinct, and affirmative defenses to Plaintiffs' Complaint, and to each cause of action thereof, this answering Defendant alleges as follows:

### FIRST AFFIRMATIVE DEFENSE

### (FAILURE TO STATE A CAUSE OF ACTION)

3.     Defendant alleges that Plaintiffs' unverified Complaint fails to state facts sufficient to constitute a cause of action upon which relief may be granted against this answering Defendant.

### SECOND AFFIRMATIVE DEFENSE

### (CONTRIBUTORY/COMPARATIVE NEGLIGENCE)

4.     Defendant alleges, on information and belief, that any damages suffered by Plaintiffs as alleged in Plaintiffs' Complaint were proximately caused, in whole or in part, by the failure of Plaintiffs to exercise reasonable care under the circumstances and, therefore, Plaintiffs' recovery, if any, must be diminished by the proportion of the negligence of Plaintiffs which proximately caused or contributed to Plaintiffs' alleged damages, if any.

### THIRD AFFIRMATIVE DEFENSE

### (STATUTE OF LIMITATIONS)

5.     Defendant alleges on information and belief that Plaintiffs' Complaint is barred by the applicable statute of limitations pursuant to Code of Civil Procedure sections 335.1, 338, 339, 340.2, 343, 361, 366.1, and/or 474.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

2

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

918781.1

41

## FOURTH AFFIRMATIVE DEFENSE

### (CONDUCT OF OTHERS)

6.     Defendant alleges, on information and belief, that any loss, injury, or damage to Plaintiffs were proximately caused or contributed to by the negligent or other tortious acts, omissions, and/or fault of other persons or entities which this answering Defendant neither controlled nor had the right or duty to control, and that no injury or damages of which Plaintiffs complain were caused by acts or omissions of this answering Defendant.

## FIFTH AFFIRMATIVE DEFENSE

### (PROPOSITION 51)

7.     Defendant alleges, on information and belief, that there are other persons, parties, entities and/or defendants who are at fault and proximately caused Plaintiffs' injuries, if any.  If this answering Defendant is responsible to Plaintiffs, which responsibility is expressly denied, this answering Defendant is only liable for its proportionate share of non-economic damages, if any, as set forth in Civil Code section 1431.2.

## SIXTH AFFIRMATIVE DEFENSE

### (NOT A SUCCESSOR-IN-INTEREST)

8.     Defendant denies any and all liability to the extent that Plaintiffs alleges that this answering Defendant is liable as a successor, successor in business, successor in product line or a portion thereof, assign, predecessor, predecessor in business, predecessor in product line or a portion thereof, parent, alter-ego, subsidiary, wholly or partially owned by, or the whole or partial owner of or member in any entity researching, studying, manufacturing, fabricating, designing, labeling, assembling, distribution, leasing, buying, offering for sale, selling, inspecting, servicing, installing, contracting for installation, repairing, marketing, warranting, rebranding, manufacturing for others, packaging and advertising a certain substance, the generic name of which is asbestos.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

918781.1

42

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SEVENTH AFFIRMATIVE DEFENSE

### (ASSUMPTION OF RISK)

9.    Defendant alleges, on information and belief, that Plaintiffs voluntarily and knowingly assumed the alleged risks and alleged hazards incident to the alleged operations, acts, and conduct at the times and places alleged in Plaintiffs' Complaint, and that Plaintiffs said acts proximately caused and contributed to Plaintiffs' alleged injuries and damages, if any.

## EIGHTH AFFIRMATIVE DEFENSE

### (FAILURE TO FOLLOW WARNINGS)

10.    Defendant alleges, on information and belief, that Plaintiffs were advised, informed, and warned of any potential hazards and/or dangers, if any, associated with the normal or foreseeable use, handling, and storage of the products, substances, and equipment described in Plaintiffs' Complaint, and Plaintiffs failed to follow such warnings.

## NINTH AFFIRMATIVE DEFENSE

### (LACK OF LEGAL CAPACITY TO SUE)

11.    Defendant alleges, on information and belief, that Plaintiffs lacks the legal capacity to sue and are not a real party-in-interest.

## TENTH AFFIRMATIVE DEFENSE

### (FAILURE TO MITIGATE)

12.    Defendant alleges, on information and belief, that Plaintiffs failed to mitigate the damages, if any, suffered as a result of the circumstances and injuries alleged in Plaintiffs' Complaint.

## ELEVENTH AFFIRMATIVE DEFENSE

### (SUPERSEDING AND INTERVENING CAUSE)

13.    Defendant alleges, on information and belief, that any damages suffered by Plaintiffs were a direct and proximate result of a superseding and intervening cause of which this answering Defendant had no control, right to control or duty to control.

4

## TWELFTH AFFIRMATIVE DEFENSE

### (MODIFICATION/ALTERATION OF PRODUCT)

14.     Defendant, on information and belief, alleges that the products which allegedly injured Plaintiffs were altered, changed, or otherwise modified by parties, individuals, or entities other than this answering Defendant, and said modifications, changes or alterations were a direct and proximate cause of the injuries alleged by Plaintiffs, if any.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (MISUSE AND ABUSE)

15.     Defendant, on information and belief, alleges that prior to and at the time of the injuries alleged in Plaintiffs' Complaint, the products which allegedly injured Plaintiffs were misused and abused and were not being used in the manner in which they were intended to be used.  Such misuse and abuse directly and proximately caused and contributed to the injuries and damages complained of by Plaintiffs, if any.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (SPOLIATION OF EVIDENCE)

16.     Defendant alleges, on information and belief, that Plaintiffs and/or Plaintiffs' agents negligently or intentionally failed to preserve, and permitted the spoliation of, material evidence, including but not limited to the products which Plaintiffs allege give rise to Plaintiffs' Complaint herein. Such conduct bars Plaintiffs' action and/or gives rise to liability on the part of Plaintiffs for damages payable to this answering Defendant.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (NOT A SUBSTANTIAL FACTOR)

17.     Defendant alleges, on information and belief, that Plaintiffs were not exposed to any substance released from any product manufactured and distributed by this answering Defendant that was a substantial factor in causing the injury, damage, or loss of which Plaintiffs complain, and, therefore, this answering Defendant is not liable to Plaintiffs as alleged.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

918781.1

44

## SIXTEENTH AFFIRMATIVE DEFENSE

## (LACK OF NOTICE)

18.     Defendant alleges, on information and belief, that Plaintiffs failed to give reasonable, timely, sufficient and adequate notice to this answering Defendant of the alleged liability, damage or injury, if any.

## SEVENTEENTH AFFIRMATIVE DEFENSE

## (LACHES)

19.     Defendant alleges, on information and belief, that Plaintiffs have unreasonably delayed in filing and serving this action, without good cause therefore.  Said delay has directly resulted in prejudice to this answering Defendant, and, therefore, this action is barred by the doctrine of laches.

## EIGHTEENTH AFFIRMATIVE DEFENSE

## (UNCLEAN HANDS)

20.     Defendant alleges, on information and belief, that Plaintiffs are precluded from maintaining any cause of action against this answering Defendant because Plaintiffs' actions preclude equitable relief under the doctrine of unclean hands.

## NINETEENTH AFFIRMATIVE DEFENSE

## (SOPHISTICATED USER)

21.     Defendant states, on information and belief, that Plaintiffs and/or their employers were sophisticated users of the products and/or substances referred to in the Complaint and, therefore, their claims against Defendant are barred as articulated in Johnson v. American Standard (2008) 43 Cal.4th 56.

## TWENTIETH AFFIRMATIVE DEFENSE

## (SOPHISTICATED INTERMEDIARY)

22.     Defendant states, on information and belief, that Plaintiffs' claims are barred by application of the sophisticated intermediary defense.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

6

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

918781.1

TICKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (NO WARRANTY)

23.    This answering Defendant gave no warranties, either express or implied, to Plaintiffs.

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (LACK OF PRIVITY)

24.    At all times and places mentioned in Plaintiffs' Complaint, Defendant alleges, on information and belief, that Plaintiffs were not in privity of contract with this answering Defendant and said lack of privity bars Plaintiffs' recovery herein upon any theory of warranty.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (VAGUENESS OF DEFECT STANDARDS)

25.    The State of California's judicially created definitions of "manufacturing" and "design defects" and the standards for determining whether there has been an actionable failure to warn are unconstitutional in that, among other things, they are void for vagueness and place an undue burden upon interstate commerce, as well as constitute an impermissible effort to regulate in an area that has previously been preempted by the federal government.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (NO MARKET SHARE OR ENTERPRISE LIABILITY)

26.    Defendant alleges, on information and belief, that each and every cause of action of Plaintiffs' Complaint fails to state facts sufficient to constitute a cause of action under Sindell, "market share," or any theory of enterprise liability.  Defendant further alleges on information and belief that Plaintiffs have failed to join as defendants in this action the producers of a substantial market share of the product or products which allegedly caused or contributed to the injuries of which Plaintiffs complain.

7

46

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

## (WORKERS' COMPENSATION – EXCLUSIVE REMEDY)

27.     Defendant alleges on information and belief that:  Plaintiffs have received or will receive disability and medical benefits under a workers' compensation law, or similar laws, from Plaintiffs' employers or former employers or their workers' compensation or similar insurers, on the basis that the injuries and damages allegedly sustained by Plaintiffs will give rise to this lawsuit occurred because Plaintiffs were performing their duties as an employee of said employers and, therefore, Plaintiffs' claims are barred by the statute of limitations per 45 U.S.C. section 56, and the exclusive remedy provisions of California Labor Code section 3601, et seq.; at the time of any alleged injury, each and every of Plaintiffs' employers and former employers was careless and negligent about the matters alleged in Plaintiffs' Complaint, and said carelessness and negligence of each and every of said employers contributed directly and proximately to any alleged injuries or damages sustained by Plaintiffs; and any judgment or verdict that might be rendered in favor of Plaintiffs herein should be reduced by the amount of all such payments by said employers or insurers, and that each of said employers or insurers should be barred from any recovery by lien or otherwise in connection with this matter under the authority of Witt v. Jackson (1961) 57 Cal.2d 57.

## TWENTY-SIXTH AFFIRMATIVE DEFENSE

## (STATE OF THE ART)

28.     The state of the medical, scientific, and industrial knowledge and practices was at all material times such that this answering Defendant neither breached any alleged duty owed to Plaintiffs, nor knew, or could have known, that the product(s) it allegedly manufactured and distributed presented a foreseeable risk of harm to Plaintiffs in the normal and expected use of such a product.  Any products, substances,  or equipment designed, manufactured, formulated, sold, or distributed by this answering Defendant were made consistent with the state of the art applicable to said products, substances, or equipment at the time of their design, manufacture, sale, formulation, or distribution.

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

8

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

918781.1

47

1  <u>TWENTY-SEVENTH AFFIRMATIVE DEFENSE</u>

2  <u>(GOVERNMENT CONTRACTOR DEFENSE/IMMUNITY)</u>

3      29.    To the extent that Plaintiffs' vague allegations in the complaint ultimately are specified

4  through discovery and the litigation of this matter to allegedly arise related to any products and/or

5  services connected to the U.S. military and U.S. government, Defendant alleges that it acted solely under

6  the direction of a federal officer and pursuant to reasonably precise specifications of the U.S.

7  government and properly performed all work thereunder according to such specifications in

8  manufacturing and distributing any products for which Plaintiffs allege caused injury to Plaintiffs.

9  Defendant further alleges that it provided any and all warnings required by said specifications and

10  federal officer and that the U.S. government had knowledge of any health hazards relating to the

11  handling and use of said products which was superior to that of this Defendant and that this Defendant is

12  therefore immune to suit under the military contractor immunity doctrine as set forth in <u>Boyle v. United</u>

13  <u>Tech. Corp.</u> (1988) 487 U.S. 500.

14  <u>TWENTY-EIGHTH AFFIRMATIVE DEFENSE</u>

15  <u>(OFFSET)</u>

16      30.    This answering Defendant is entitled to an offset regarding all settlements entered into, or

17  to be entered into between Plaintiffs and any person or entity, including Defendant, relating to their

18  claims and allegations in this proceeding.

19  <u>TWENTY-NINTH AFFIRMATIVE DEFENSE</u>

20  <u>(FAILURE TO JOIN INDISPENSABLE PARTIES)</u>

21      31.    Defendant alleges, on information and belief, that Plaintiffs have failed to join

22  indispensable parties in this action pursuant to Code of Civil Procedure section 389.

23  <u>THIRTIETH AFFIRMATIVE DEFENSE</u>

24  <u>(COLLATERAL ESTOPPEL, ISSUE PRECLUSION AND RES JUDICATA)</u>

25      32.    Defendant alleges, on information and belief, that Plaintiffs' claims against this

26  answering Defendant are barred by the doctrines of collateral estoppel, issue preclusion and/or res

27  judicata.

28

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

918781.1

48

## THIRTY-FIRST AFFIRMATIVE DEFENSE

### (EXPRESS OR IMPLIED CONSENT)

33.     Defendant alleges, on information and belief, that Plaintiffs' claims against this answering Defendant are barred because Plaintiffs expressly or impliedly consented to the conduct of this answering Defendant described in Plaintiffs' Complaint.

## THIRTY-SECOND AFFIRMATIVE DEFENSE

### (NO NOTICE OF BREACH OF WARRANTY)

34.     Defendant alleges, on information and belief, that Plaintiffs' claims for breach of warranty are barred due to the failure of the Plaintiffs to give prompt and reasonable notice to this answering Defendant of any alleged breach of warranty resulting in Plaintiffs' alleged injuries.

## THIRTY-THIRD AFFIRMATIVE DEFENSE

### (WAIVER OF RIGHTS)

35.     Defendant alleges, on information and belief, that Plaintiffs, by their acts, conduct and omissions, expressly or impliedly waived whatever rights he may have had against this answering Defendant.

## THIRTY-FOURTH AFFIRMATIVE DEFENSE

### (ESTOPPEL BASED ON CONDUCT)

36.     Defendant alleges, on information and belief, that Plaintiffs' claims against this answering Defendant are barred because Plaintiffs engaged in conduct by reason of which Plaintiffs is estopped from asserting any claim against this answering Defendant.

## THIRTY-FIFTH AFFIRMATIVE DEFENSE

### (PLEAS IN ABATEMENT)

37.     Defendant alleges as pleas in abatement:  That another action is pending between the same parties on the same cause of action; and Plaintiffs have improperly joined parties in this action.

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

10

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

918781.1

49

### THIRTY-SIXTH AFFIRMATIVE DEFENSE

### (PUNITIVE DAMAGES – FAILURE TO STATE A CAUSE OF ACTION)

38.     Defendant alleges that the Complaint in its entirety, and each cause of action therein, fails to state a cause of action against this answering Defendant for punitive or exemplary damages.

### THIRTY-SEVENTH AFFIRMATIVE DEFENSE

### (UNCONSTITUTIONALITY OF PUNITIVE DAMAGES)

39.     Defendant alleges that, to the extent that it seeks exemplary or punitive damages pursuant to California Civil Code section 3294, the Complaint violates this answering Defendant's right to procedural due process under the Fifth and Fourteenth Amendment of the United State Constitution, and Article I, section 7, of the California State Constitution, and therefore fails to state a cause of action upon which either punitive or exemplary damages can be awarded in that:

A.     Consideration of any exemplary damages in this action would allow standardless discretion to the jury to determine punishment, depriving this answering Defendant of prior notice of the consequences of its action;

B.     The admission of evidence directly to the jury concerning this answering Defendant's assets or net worth will create an undue risk of any proper verdict on each issue concerning liability, the measure of compensatory damages, whether to award punitive damages, and the measure of punitive damages;

C.     Exemplary damages, by their very nature, constitute punishment and are a quasi-criminal sanction for which the burden of proof should not be less than "beyond a reasonable doubt", not merely "a preponderance of the evidence" or "clear and convincing evidence."

### THIRTY-EIGHTH AFFIRMATIVE DEFENSE

### (PUNITIVE DAMAGES – EXCESSIVE FINES)

40.     Defendant alleges that, to the extent that it seeks punitive or exemplary damages pursuant to California Civil Code section 3294, the Complaint violates this answering Defendant's right to protection from "excessive fines" as provided in the Eighth Amendment of the United State Constitution and Article I, section 17 of the Constitution of the State of California, and violates this answering

11

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

918781.1

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

50

1  Defendant's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the

2  United States Constitution and the Constitution of the State of California, and therefore fails to state

3  facts sufficient to support an award of either punitive or exemplary damages.

### THIRTY-NINTH AFFIRMATIVE DEFENSE

### (PUNITIVE DAMAGES—QUASI CRIMINAL SANCTION)

6      41.      Defendant alleges that exemplary damages are punishment, a quasi-criminal sanction, for

7  which this answering Defendant has not been afforded specific procedural safeguards prescribed by the

8  Fourth, Fifth and Sixth Amendments of the United States Constitution and Article 1, Section 7 of the

9  Constitution of the State of California.

### FORTIETH AFFIRMATIVE DEFENSE

### (PUNITIVE DAMAGES—EX POST FACTO)

12      42.      Defendant alleges that an award of punitive or exemplary damages would constitute an

13  ex post facto law in violation of the United States Constitution and the Constitution of the State of

14  California to the extent that such award is based on conduct which, at the time it was undertaken, would

15  not have constituted acts sufficient to impose punitive or exemplary damages at law.

### PRAYER

17      WHEREFORE, having fully answered, this answering Defendant prays for judgment and relief

18  as follows:

19      1.      That Plaintiffs take nothing from this answering Defendant by reason of the unverified

20  Complaint;

21      2.      That the unverified Complaint be dismissed as to this answering Defendant;

22      3.      For judgment in favor of this answering Defendant and against Plaintiffs as to each and

23  every cause of action listed in Plaintiffs' Complaint.

24      4.      That this answering Defendant be awarded its costs for this lawsuit, including its

25  attorneys' fees;

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL
INJURIES; DEMAND FOR JURY TRIAL

918781.1

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

51

5.     That the trier of fact determine what percentage of the fault or other liability of all persons, entities or parties whose fault or other liability proximately caused Plaintiffs' alleged damages is attributable to each person;

6.     That any judgment for damages against this answering Defendant in favor of Plaintiffs be no greater than an amount which equals this answering Defendant's proportionate share, if any, of the total fault or other liability which proximately caused Plaintiffs' damages;

7.     That this answering Defendant be awarded appropriate credits and setoffs arising out of any payment of workers' compensation settlements or other settlements and/or awards as alleged above; and,

8.     That this answering Defendant be awarded such other and further relief as the Court deems proper and equitable.

DATED: July 29, 2013                    TUCKER ELLIS LLP

By: _____
        Jenny-Anne S. Flores
        Attorneys for Defendant,
        ROCKWELL AUTOMATION, INC.

## DEMAND FOR JURY TRIAL

Defendant ROCKWELL AUTOMATION, INC. hereby repeats its prior demand for a trial by jury of all claims so triable.

DATED: July 29, 2013                    TUCKER ELLIS LLP

By: _____
        Jenny-Anne S. Flores, Esq.
        Attorneys for Defendant,
        ROCKWELL AUTOMATION, INC.

DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL

010802.005348/918781.1

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES.

I, Silvia Munoz, declare as follows:

I am employed in the County of Los Angeles, State of California.  I am over the age of eighteen years and am not a party to this action.  My business address is **Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, CA 90071-2223,** in said County and State.

On July 29, 2013, I served the **DEFENDANT ROCKWELL AUTOMATION, INC.'S ANSWER TO PLAINTIFFS' COMPLAINT FOR PERSONAL INJURIES; DEMAND FOR JURY TRIAL** on the interested parties in this action by:

☒  **VIA ELECTRONIC SERVICE** by causing such documents to be served on the interested parties to this action as designated on the transaction receipt by submitting an electronic version of the documents via Lexis Nexis File & Serve Xpress website.

☐  **BY FACSIMILE** to Plaintiff's counsel from facsimile number (213) 430-3409, I caused each such document to be transmitted by facsimile machine, to the parties and numbers indicated on the attached Service List, pursuant to Rule 2008.  The facsimile machine I used complied with Rule 2003(3) and pursuant to Rule 2008(e)(4), I caused the machine to print a transmission record of the transmission.  Such transmission was reported as complete and without error.

☒  I am employed in the office of a member of the bar of this court, and that the foregoing document(s) was(were) printed on recycled paper.

☒  **(STATE)**  I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on July 29, 2013, at Los Angeles, California.

Silvia Munoz

010802.005348/918781.1

# EXHIBIT B

TUCKER ELLIS LLP
Anthony D. Brosamle – SBN 208664
anthony.brosamle@tuckerellis.com
Jenny-Anne S. Flores – SBN 273364
jenny-anne.flores@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone:     213.430.3400
Facsimile:      213.430.3409

TUCKER ELLIS LLP
Nicole E. Gage – SBN 208658
nicole.gage@tuckerellis.com
135 Main St., Suite700
San Francisco, CA 94105
Telephone:  415.617.2400
Facsimile:   415.617.2409

Attorneys for Defendant
ROCKWELL AUTOMATION, INC.

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BENJAMIN LARA, JR. and MARY LARA | ) Case No. |
| Plaintiffs, | ) **DECLARATION OF THOMAS F. MCCAFFERY IN SUPPORT OF DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL** |
| v. | ) |
| CBS CORPORATION, ET AL. | ) |
| Defendants. | ) |

I, Thomas F. McCaffery, declare and state as follows:

1.      I am over the age of 18 years of age and am competent to testify to the facts set forth in this declaration.  I have personal knowledge of the facts contained in this declaration.

2.      My business address is 107 S. West Street, Suite 709, Alexandria, VA 22314.

3.      My formal education includes a Bachelor of Science degree from the U.S.

EXHIBIT _B_

*TUCKER ELLIS LLP*
*Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco*

1   Merchant Marine Academy in Marine Transportation & Management, a Masters of

2   Business Administration from Georgetown University and graduation from the College

3   of Naval Command and Staff of the U.S. Naval War College.

4       4.   I am an officer in the United States Navy and have been since 1976. My

5   current rank is Commander. I have been assigned on active duty to a variety of cruiser

6   and destroyer type ships assigned to the U.S. Atlantic and Pacific Fleets. Among the

7   designations I received during my Navy service are "Executive Officer, Afloat", "Plans

8   and Policy Director" and "Engineering Liaison Officer."

9       5.   I am a member of the Board of Directors of the American Merchant Marine

10  History Project and have been a full member of the Society of Naval Architects and the

11  Marine Engineers for over twenty-two years. In addition, I am a maritime technical

12  consultant and researcher.

13      6.   Through my education, training and work experience, I have developed

14  expertise regarding historical United States Navy ship design, development, maintenance,

15  construction and repair, including the mandatory nature of compliance with military

16  specifications and the level of control and supervision exercised by the United States

17  Navy over the design, manufacture and installation of equipment aboard a United States

18  Navy vessel.

19      7.   I am informed that the plaintiffs in the above-captioned matter claim that

20  plaintiff Benjamin Lara was exposed to asbestos from electrical products allegedly

21  supplied by Rockwell Automation, Inc. ("Rockwell") on board United States Navy

22  vessels while serving in the United States Navy from 1963 to 1965. Plaintiffs claim Mr.

23  Lara served on board the USS Klondike (SD-22) and the USS Mataco (ATF-86).

24      8.   Any and all electrical components installed on naval ships would have been

25  required to meet either Navy Department specifications or Military Specifications

26  (MilSpecs). Navy Department and Military specifications for shipboard electrical and

27  other products are precise and include a strict design approval and inspection process

28

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

2

55

1   controlled by the U.S. Navy.

2       9.    Electrical components manufactured for use on United States Navy vessels

3   must strictly comply with reasonably precise specifications and the military approval

4   process.  For example, those specifications applicable to switches, panels and motor

5   controllers for use onboard United States Naval vessels include, but are not limited to,

6   MIL-M-1940, MIL-M-17059, MIL-M-17060, MIL-M-17413, MIL-M-17556, and MIL-

7   G-18474.  The specifications applicable to circuit breakers, contactors, relays, motor

8   controllers, panels and circuit breakers, rheostats, switches and similar electrical

9   components include, but are not limited to, MIL-C-1938, MIL-C-1939, MIL-R-2033,

10   MIL-C-2174, MIL-C-2212, MIL-R-15109 and MIL-C-17361.  Finally, the overall design

11   of electrical systems for naval shipboard use was controlled by a separate specification

12   MIL-E-917.

13       10.    Numerous Military, Federal and Commercial Specifications, Standards and

14   Drawings are incorporated by specific reference into each specification, forming a part of

15   the specification set applicable to any particular piece of equipment.

16       11.    Before a manufacturer received authorization to manufacture or supply

17   machinery, including electrical components, for/to the U.S. Navy, all of the drawings,

18   plans, technical manuals and other design documentation first had to be inspected and

19   approved by the U.S. Navy.  These inspections and approvals were the responsibility of

20   the Bureau of Engineering and its successor organizations, the Bureau of Ships, Naval

21   Ship Systems Command and Naval Sea Systems Command (hereinafter, "Navy").  The

22   Navy frequently required changes in design, materials and documentation before

23   approving the design and authorizing the manufacture of the machinery.

24       12.    United States Naval Machinery Inspectors were stationed on site at

25   manufacturing facilities to inspect and test this equipment during each phase of the

26   manufacturing process.  At any point, if any material, feature or component of the

27   equipment failed to comply with the applicable specifications, standards or the approved

28   design, then it would have been rejected.  In short, if an electrical component supplied to

TUCKER ELLIS LLP

Cleveland • Columbus • Denver • Los Angeles • San Francisco

3

1   the Navy was installed aboard a U.S. Naval vessel, then it conformed to the detailed plans

2   that were approved the Navy and necessarily complied with all of the precise military

3   specifications and standards, including the specification of the precise material

4   composition of component parts, including any that may have contained asbestos.

5       13.   The Navy required the use of many different components and materials that

6   comprised electrical components that qualified for use on Navy vessels. Each sub-

7   component was designed and manufactured in accordance with similarly precise

8   specifications, standards, and design reviews which also specifically required the precise

9   type of material to be used in these components. Where the specifications or standards

10   permitted the manufacturer to choose between two or more types of materials (such as

11   plastic materials or electrical insulation materials), the contractor's choice was subject to

12   specific Navy review and approval. To the extent that any piece of equipment supplied to

13   the U.S. Navy for installation on a combat ship contained asbestos, it would have been

14   specifically required or approved by the Navy through the specification and design

15   approval process.

16       14.   If an electrical component on a piece of naval equipment was actually

17   installed onboard a U. S. Naval vessel, then that component and the material composition

18   of that component complied with the precise specifications, standards and design

19   requirements that the Navy required for such a component. If such a component

20   contained asbestos, then the Navy required and approved the inclusion of asbestos in that

21   component in one form or another.

22       15.   Therefore, every facet of the design and manufacture of any piece of

23   equipment manufactured or supplied to the U.S. Navy for use on a Navy vessel by

24   Rockwell would have been controlled by the U.S. Navy.

25       16.   The Navy's specifications governing equipment supplied to the Navy also

26   covered the nature of any communication affixed to or accompanying the equipment.

27   The Navy had detailed specifications that governed the form and content of written

28   materials to be delivered with, or affixed to, the equipment supplied to the Navy. A

TUCKER ELLIS LLP

Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

4

DECLARATION OF THOMAS F. MCCAFFERY IN SUPPORT OF DEFENDANT ROCKWELL AUTOMATION, INC.'S
NOTICE OF REMOVAL

918773.1

1   vendor such as Rockwell would not have been permitted (either under the specifications
2   or, as a matter of Navy practice) to include any type of warning or cautionary statement
3   not required or approved by the Navy without prior discussion, approval, and acceptance
4   by the Navy.

5     17. The U.S. Government, through the U.S. Navy, was and still is, one of the
6   world's largest heavy industrial concerns. Every day for over 100 years thermal
7   insulation materials, gaskets, and packing have been removed, fabricated and installed by
8   the U.S. Navy's shipyards, ship repair facilities and shipbuilding contractors. Industrial
9   hygiene in the Navy's industrial facilities was initially the responsibility of Navy Medical
10  Corps physicians. However, in the early 1940s, the U.S. Navy's Bureau of Medicine and
11  Surgery and the U.S. Public Health Service initiated shipyard industrial hygiene
12  programs to provide greater protection for uninformed, civilian and contractor workforce.
13  As a result, the Bureau of Medicine and Surgery and U.S. Public Health Service, as well
14  as other Navy organizations, including the Bureau of Ships and its successors, developed
15  and acquired state of the art knowledge concerning the potential risks or hazards relating
16  to work with or around asbestos containing materials and products. It is inconceivable
17  that a company manufacturing electrical control products such as Rockwell would have
18  had the same level of sophisticated knowledge as he Navy, U.S. Maritime Commission
19  and the Public Health Service concerning potential asbestos hazards. In fact, the U.S.
20  Navy possessed information and knowledge superior to that of the companies
21  manufacturing component parts or equipment for naval vessels on issues of industrial
22  hygiene and asbestos medicine, including any potential risks involved with use of
23  asbestos containing components or materials in association with electrical devices or
24  other Navy equipment.

25
26  Further affiant sayeth not.
27
28

5

---

DECLARATION OF THOMAS F. MCCAFFERY IN SUPPORT OF DEFENDANT ROCKWELL AUTOMATION, INC.'S
NOTICE OF REMOVAL

918773.1

1

2       I declare under the penalty of perjury under the laws of the United States, the laws

3 of the State of California, and the laws of the Commonwealth of Virginia that the

4 foregoing is true and correct.  Executed on July 31, 2013.

5

6

7

8

9                           Thomas F. McCaffery

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

6

DECLARATION OF THOMAS F. MCCAFFERY IN SUPPORT OF DEFENDANT ROCKWELL AUTOMATION, INC.'S
NOTICE OF REMOVAL

918773.1

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

On August 1, 2013, I served the following document entitled DEFENDANT ROCKWELL AUTOMATION, INC.'S NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1442(A)(1) (GOVERNMENT CONTRACTOR IMMUNITY-ACTING UNDER DIRECTION OF FEDERAL OFFICERS) on the interested parties in this action by:

( )   **ELECTRONICALLY VIA ECF:** the above-entitled document to be served electronically through the United States District Court, Central District ECF website, addressed to all parties appearing on the Court's ECF service list. A copy of the "Filing Receipt" page will be maintained with the original document in our office.

(X)   **BY MAIL:** By placing a true copy thereof enclosed in a sealed envelope(s) as indicated on the attached Service List, and placing each for collection and mailing on that date following ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the U.S. Postal Service in Los Angeles, California, in a sealed envelope with postage fully prepaid.

(X)   I declare that I am employed in the office of the Bar of this Court at whose direction the service was made.

Executed on August 1, 2013 at Los Angeles, California.

_Christine Jones_
Christine Jones

010802.005348/918775

SERVICE LIST

Re:  *Benjamin Lara and Mary Lara v CBS Corporation, et al.*

Gordon D. Greenwood                          ***Attorneys for Plaintiffs***
KAZAN McCLAIN SATTERLY
LYONS GREENWOOD & OBERMAN          Tel. (510) 302-1000-Fax: (510) 835-4913
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607

TUCKER ELLIS LLP
Cleveland ♦ Columbus ♦ Denver ♦ Los Angeles ♦ San Francisco

2

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge _____Audrey B. Collins_____ and the assigned Magistrate Judge is _____Margaret A. Nagle_____ .

The case number on all documents filed with the Court should read as follows:

### 2:13-CV-5569-ABC (MANx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

_____August 1, 2013_____
Date

By _MDAVIS_____
Deputy Clerk

## NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

[x] Western Division
312 N. Spring Street, G-8
Los Angeles, CA 90012

[ ] Southern Division
411 West Fourth St., Ste 1053
Santa Ana, CA 92701

[ ] Eastern Division
3470 Twelfth Street, Room 134
Riverside, CA 92501

**Failure to file at the proper location will result in your documents being returned to you.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**

CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| BENJAMIN LARA, JR. and MARY LARA | Rockwell Automation, Inc.<br>[See Attachment] |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Gordon D. Greenwood<br>Kazan, McClain, Satterley, Lyons, Greenwood & Oberman<br>55 Harrison St., Suite 400<br>Oakland, CA 94607<br><br>Tel.: (510) 302-1000 | Anthony D. Brosamle, Esq.<br>Nicole E. Gage, Esq.<br>Jenny-Anne S. Flores<br>TUCKER ELLIS LLP<br>515 So.Flower Street, 42nd Floor<br>Los Angeles, CA  90071<br>Tel: (213) 430-3400; Fax: (213) 430-3409 |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☐ 1 Original Proceeding   ☒ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No       ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U. S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
28 U.S.C. § 1442(a)(1); Asbestos personal injury action

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | ☐ 151 Medicare Act | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 160 Stockholders' Suits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 190 Other Contract | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 195 Contract Product Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 196 Franchise | | ☐ 445 American with Disabilities – Employment | ☐ 630 Liquor Laws | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | **REAL PROPERTY** | **IMMIGRATION** | | ☐ 640 R.R.& Truck | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 220 Foreclosure | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 660 Occupational Safety /Health | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 465 Other Immigration Actions | | ☐ 690 Other | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 290 All Other Real Property | | | | |

**CV13-05569**

| FOR OFFICE USE ONLY:     Case Number: | |
|---|---|

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)                                    CIVIL COVER SHEET                                    Page 1 of 2

COPY

American LegalNet, Inc.
www.FormsWorkflow.com

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?   ☒ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?   ☒ No ☐ Yes
If yes, list case number(s): _____

Civil cases are deemed related if a previously filed case and the present case:

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
                              ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
                              ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
                              ☐ D. Involve the same patent, trademark or copyright, <u>and</u> one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Plaintiff Benjamin Lara, Jr. - Los Angeles (per Complaint)<br>Plaintiff Mary Lara - Unknown to Defendant | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Unknown to Defendant |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
     **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Per Plaintiffs' State Court Complaint, San Bernardino County from 1965-1983 | Per Plaintiffs' State Court Complaint, various Naval vessels from 1963-1965. |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Jenny-Anne S. Flores_ (signature)   Date August 1, 2013
                                          Jenny-Anne S. Flores

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.<br>www.FormsWorkflow.com

**ATTACHMENT TO CIVIL COVER SHEET**

*Re: Lara v. CBS Corporation, et al.*

ROCKWELL AUTOMATION, INC. INDIVIDUALLY AND AS SUCCESSOR IN INTEREST, PARENT, ALTER EGO AND EQUITABLE TRUSTEE OF ALLEN-BRADLEY COMPANY AND ROSTONE CORPORATION

CBS CORPORATION, F/K/A VIACOM, INC., SUCCESSOR BY MERGER TO CBS CORPORATION F/K/A WESTINGHOUSE ELECTRIC CORPORATION

EATON CORPORATION INDIVIDUALLY AND AS SUCCESSOR IN INTEREST, PARENT, ALTER EGO AND EQUITABLE TRUSTEE TO CUTLER-HAMMER, INC.

FOSTER WHEELER, LLC, SURVIVOR TO MERGER WITH FOSTER WHEELER CORPORATION

GEORGIA-PACIFIC LLC, F/K/A GEORGIA PACIFIC CORPORATION

GENERAL ELECTRIC COMPANY

INDUSTRIAL CLUTCH & BRAKE, INC. DBA FRICTION MATERIALS CO. OF LONG BEACH

MECHANICAL DRIVES & BELTING FKA LOS ANGELES RUBBER COMPANY

METALCLAD INSULATION CORPORATION

OCCIDENTAL CHEMICAL CORPORATION INDIVIDUALLY AND AS SUCCESSOR IN INTEREST, PARENT, ALTER EGO AND EQUITABLE TRUSTEE OF THE DUREZ DIVISION OF HOOKER CHEMICALS & PLASTICS CORPORATION

P&H MINING EQUIPMENT, INC.

SCHNEIDER ELECTRIC USA, INC. FKA SQUARE D COMPANY

UNION CARBIDE CORPORATION

METROPOLITAN LIFE INSURANCE COMPANY

DOES 1-275

010802.005348/920209